417 A.2d 660

**CHRIST GOSPEL TEMPLE, by Bishop F. M. Thomas, Trustee ad litem, Appellant,**

v.

**LIBERTY MUTUAL INSURANCE CO., a corporation**

v.

**PRESBYTERIAN CHURCH OF HARRISBURG, a Non-Profit Corporation, Appellant.**

Superior Court of Pennsylvania.

Argued March 12, 1979.

Filed Dec. 21, 1979.

Richard C. Angino, Harrisburg, for appellant.

Joseph P. Hafer, Harrisburg, for appellee.

Before SPAETH, HESTER and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The Appellants appeal from the entry of a judgment in favor of Defendant-Appellee Liberty Mutual Insurance Co., in an action wherein Appellants sought to recover purported losses sustained in a fire to a church building in Harrisburg, Pennsylvania. Both the procedural and the substantive histories of this case are long and complicated. A recitation of the background of the case is appropriate prior to any discussion of the issues raised by the parties.

The record shows that for many years, the congregation of Westminster Presbyterian Church (hereinafter referred to as "Westminster") owned and occupied a church building at Green and Reily Streets in the City of Harrisburg. In May, 1968, Westminster purchased a fire insurance policy on this building from the Appellee, Liberty Mutual Insurance Co. (hereinafter referred to as "Liberty"). The policy was written for an initial term of three years, and in May, 1971, was renewed for an additional three years. Premiums were paid

annually and the last premium was paid by Westminster to cover the period from May, 1972 through May, 1973. Apparently for reasons of declining membership, in August, 1972, Westminster merged into another Presbyterian organization, the Appellant Presbyterian Church of Harrisburg (hereinafter referred to as "Presbyterian"). In the merger, Presbyterian acquired the former Westminster property at Green and Reily Streets. On December 19, 1972, Presbyterian conveyed that property for $9,000 to the Appellant Christ Gospel Temple (hereinafter referred to as "Christ Gospel"). Presbyterian also made a written assignment to Christ Gospel of Westminster's insurance policy with Liberty, for a separate consideration of $750. That amount apparently represented that part of the policy premium paid in advance for the remainder of the annual policy term. In its deed to Christ Gospel, Presbyterian retained an option, for a period of ten years, to repurchase the property for the original sale price if the premises ever ceased to be used for Christian services.

Liberty was not notified by the parties of the merger of Westminster and Presbyterian nor of the sale by Presbyterian of the property to Christ Gospel. Also, Liberty was not notified by the parties of the purported assignment of the fire insurance policy on the property from Presbyterian to Christ Gospel. On February 9, 1973, an agent of Liberty, as a result of a visit to the church, learned of the merger and the later sale of the property and reported these facts to Liberty. Ten days later, on February 19, 1973, fire substantially damaged the church structure.

Liberty denied coverage and Christ Gospel thereafter filed suit against Liberty for the fire loss. Also, Christ Gospel named as a defendant the attorney who had represented Christ Gospel at the time it purchased the premises. The theory of liability against the attorney-defendant was that he had failed to properly secure fire insurance coverage as he had promised his client he would. The attorney-defendant joined Presbyterian as an additional defendant, on the theory that Presbyterian incurred liability to Christ Gospel

for not effecting a valid assignment of the policy. Presbyterian then filed a cross-claim against Liberty, asserting that if Christ Gospel was not covered under the policy, then Presbyterian could recover for the loss since it claimed a continuing insurable interest in the property.

Liberty's defense to the claim of Christ Gospel was that it had not been notified of the merger of the churches and did not agree to the continuation of the policy by Presbyterian, the successor corporation. Further, Liberty contended that even assuming an interest in the policy by Presbyterian, the assignment to Christ Gospel, without the consent of Liberty, was not binding upon the insurer. With respect to the cross-claim filed by Presbyterian, Liberty asserted the lack of notice of the merger, claimed a lack of any insurable interest on the part of Presbyterian, and also argued that Presbyterian had been divested of any interest in the property when it assigned its rights under the insurance policy to Christ Gospel for full and adequate consideration. With respect to the purported assignment of the policy from Presbyterian to Christ Gospel, Liberty relied greatly in its defense upon a clause in the insurance policy which provided that: "Assignment of this policy shall not be valid except with the written consent of this Company."

These matters went to trial, before a jury, beginning on March 14, 1977.[1] On or about March 22, 1977, the insurer which provided professional liability insurance for the defendant-attorney settled the claim of Christ Gospel against that attorney for $125,000. The claim of Christ Gospel against Liberty was thereupon dismissed by ruling of the trial court. Also, at that point, counsel for Christ Gospel (not the same attorney who had represented them at the sale) informed the court that he would henceforth represent Presbyterian on its cross-claim against Liberty under the fire insurance policy. The trial of Presbyterian against

1. The proceedings were transferred for a time during the pretrial stage to the United States District Court for the Middle District of Pennsylvania. However, the case was remanded to the Dauphin County Court for trial and disposition and the Federal Court has not had any further involvement in proceedings.

Liberty resumed, but on March 24, 1977, the trial court declared a mistrial, on the basis that the settlement of the claim of Christ Gospel against the defendant-attorney, and the termination of its claim against Liberty, had made it improper for the jury to now deal with the cross-claim of Presbyterian against Liberty. That dispute had not, to that point, been the focus of proceedings during the trial.

Subsequent to that action by the trial court, Motions for Summary Judgment were filed by both Presbyterian and Liberty. Both Motions were denied by the Court in an Order dated December 27, 1977.[2] After other proceedings which are not relevant to this appeal, the matter was subsequently heard in a non-jury trial on March 31, 1978. A verdict was returned in favor of Liberty. Following the denial of exceptions to that verdict in the lower court, both Christ Gospel and Presbyterian have filed the instant appeal in our Court.

The Appellants, in an extensive brief and in oral argument, have offered a plethora of complicated arguments to support their request for reversal in this case. None, however, have arguable merit. While the factual and procedural background of the case is unquestionably complex, a resolution of the issues presented is possible by reference to a few simple principles of law, well established in our Commonwealth. Such principles indicate clearly that affirmance is appropriate.

We first address the rights of Christ Gospel against Liberty. Although Christ Gospel is an appellant in this action, no real emphasis is directed on this appeal to contentions that Christ Gospel has any arguable basis upon which it can recover against Liberty for any fire loss to the church building. Christ Gospel, if it had any rights against Liberty, would enjoy those rights by virtue of the purported assignment to it by Presbyterian of the latter's rights under the Liberty policy. Even if we assume that Presbyterian held the position of an insured on the policy, after Presbyterian's

**2.** The parties had also filed appeals to the Superior Court but both were withdrawn.

merger with Westminster, the original insured, we cannot ignore the import of the provision on the front page of the policy which provides that "Assignment of this policy shall not be valid except with the written consent of this Company."

■ Although the Appellants argue on several grounds,[3] that we must ignore that clear prohibition against assignments without Liberty's consent, we can find no legal basis for doing so. The provision in question is not simply a self-protective clause inserted at the whim of the Appellee, but rather is a legislatively mandated provision, *specifically required* to be included in fire insurance policies such as the one in issue in the instant case. See Act of May 17, 1921, P.L. 682, Art. V, § 522, as amended by the Act of July 12, 1935, P.L. 959, § 1, as amended by the Act of April 25, 1945, P.L. 307, § 1, as amended by the Act of July 19, 1951, P.L. 1100, § 19, as amended by the Act of June 9, 1959, P.L. 460, § 1, as amended by the Act of August 23, 1961, P.L. 1081, § 1, 40 P.S. § 636.[4] In view of the lack of consent of Liberty to the assignment of the policy by Presbyterian to Christ Gospel, the latter has no rights under the policy.

■ We find no merit to the proposition that Liberty is estopped from contesting the assignment on the basis that its agent inspected the premises just a few days before the fire and was aware of the sale of the property to another congregation. It is well settled that a fire insurance policy is a *personal* contract of indemnity, and is on the insured's *interest* in the property, *not on the property itself.* *Gorman's Estate*, 321 Pa. 292, 184 A. 86 (1936).[5] Therefore, we

3. For instance, it is brought to our attention that insurance policies have been called contracts of adhesion and are to be strictly construed in favor of the policyholder and against the insurer.

4. Later amended, in parts irrelevant to this appeal, by the Act of March 13, 1974, P.L. 187, No. 33, § 1, 40 P.S. § 636 pocket part.

5. On this point see *Donovan v. New York Casualty Company*, 373 Pa. 145, 94 A.2d 570 (1953); *Spires v. Hanover Insurance Co.*, 364 Pa. 52, 70 A.2d 828 (1950); 43 Am.Jur.2d, Insurance, § 687; 16 Couch on Insurance 2nd, §§ 63:14 and 63.160; 5A Appleman on Insurance, § 4325.

find no basis for the claim asserted by Christ Gospel against Liberty in the instant case.

We reach a similar conclusion with respect to Presbyterian's claim, but on a different rationale. Although Liberty contends that the merger of Westminster into Presbyterian afforded the latter no rights on the policy, since Liberty did not consent to afford coverage on the policy to Presbyterian, for purposes of this appeal we will assume that Presbyterian succeeded to all the legal rights of Westminster on the policy at the time of the fire loss. Even with that assumption in favor of Presbyterian, however, we cannot find that it enjoyed the required *insurable interest* in the property at the time of the fire as to allow it to recover any amount as a result of the fire loss on February 19, 1973.

Presbyterian conveyed the property to Christ Gospel on December 19, 1972. It's only remaining legal interest in the property was an option to repurchase, at the original selling price within a ten year period, in the event that the property was used for purposes other than for the holding of Christian services. Thus, on the date of the fire loss, Presbyterian had a mere possibility of the expectancy that it might exercise its option to repurchase upon the happening of a contingency. Under prevailing law, this does not amount to an insurable interest. An excellent case on point is *Van Cure v. Hartford Fire Insurance Co.*, 435 Pa. 163, 253 A.2d 663 (1969). In *Van Cure* the Court recognized the long-established principle that an insurable interest in the property is demanded prior to recovery for a fire loss in Pennsylvania, and that a mere expectancy of an option to purchase is ". . . insubstantial and incapable of qualifying as an insurable interest." 435 Pa. at 167, 253 A.2d at 667. Further, in that case the Supreme Court discussed the theories of insurable interest, as such concepts developed in our case law dating from the decisions of the English courts in the nineteenth century. The extensive discourse on the law pertaining to insurable interest by the Court in *Van Cure*,

makes a repetition of the same matters here wholly unnecessary. What is particularly significant to the issue presented in the instant case is the recognition by the Supreme Court in *Van Cure* that after the transfer of ownership, a mere expectancy of an option to repurchase property in the event of the occurrence of a contingency, is insufficient to create an insurable interest under any legal theory. While the *Van Cure* case involved the rights of a condemnee when a fire damaged the insured property after condemnation, we find the rationale directly applicable in our analysis of Presbyterian's claims on this appeal.[6] Plainly, Presbyterian's claim must fail because it lacked a legally required insurable interest in the building on the date of the fire loss. Thus, we can discern no error in the action of the lower court in dismissing the claims of both Appellants.

In view of our conclusion, we do not deem it necessary to discuss Liberty's assertion that Presbyterian divested itself of any legal rights under the policy when it purportedly assigned the policy, for consideration, to Christ Gospel in December, 1972. Moreover, because we find that Presbyterian enjoyed no insurable interest after the sale to Christ Gospel, and in recognition of the rule that a fire insurance policy is a personal contract of indemnity based on the interest of the party, and not on the property itself, we find no merit in Presbyterian's contention that any notice enjoyed by Liberty as a result of its agent's inspection prior to the fire, resulted in a waiver of Liberty's defenses against Presbyterian in the case. Finally, we find no merit to the contention by Appellants that the trial court considered irrelevant matters or expressed bias in the case.

Affirmed.

6. In *Van Cure, supra*, the condemnee was still living in the property at the time of the fire, making her claim of an insurable interest much more compelling, on an equitable basis, than that asserted by Presbyterian in this case.