1461

SOUTH CAROLINA INSURANCE COMPANY, Appellant/Respondent v. Jack B. WHITE, Mary J. White and Heritage Savings and Loan Association, Inc., Now known as COMFED Savings Bank, Defendants, of whom Jack B. White and Mary J. White are Respondents/Appellants, and of whom Heritage Savings and Loan Association, Inc., now known as COMFED Savings Bank is Respondent.

(390 S. E. (2d) 471)

Court of Appeals

*Thomas C. Salane*, of *Turner, Padget, Graham & Laney*, Columbia, *for appellant/respondent.*

*Ruben L. Gray*, Sumter, *for respondents/appellants.*

*Charles E. Carpenter, Jr.*, and *R. Davis Howser*, of *Richardson, Plowden, Grier & Howser*, Columbia, *for respondent.*

Heard Jan. 18, 1990.

Decided Feb. 20, 1990.

GOOLSBY, Judge:

This is an action for declaratory judgment brought by South Carolina Insurance Company ("SCIC") to determine whether it provided coverage under a homeowner's policy to Jack B. and Mary J. White and to Heritage Savings and Loan Association, now known as COMFED Savings Bank, when a fire destroyed a house occupied by the Whites and owned by Heritage on February 24, 1987. The trial court held that the policy covered Heritage, but not the Whites. SCIC and the Whites appeal. We affirm in part, reverse in part, and remand.

The dispositive questions on appeal concern whether Heritage is entitled to recover as a mortgagee under the terms of the policy, whether the Whites had an insurable interest in the dwelling, and whether the policy's personal property coverage is severable from the coverage of the dwelling so as to afford the Whites coverage on the dwelling's contents.

On March 2, 1986, SCIC renewed and reissued to the Whites a homeowner's insurance policy covering their "residence premises" in Sumter County. An endorsement, effec-

tive May 27, 1986, named Heritage as a second mortgagee under the policy. SCIC was unaware, however, that the first mortgagee, First Federal Savings & Loan Association of South Carolina, had instituted foreclosure proceedings on September 25, 1984, and that a decree on August 7, 1985, had foreclosed the mortgage held by First Federal, had barred the Whites' "equity of redemption," and had ordered the insured premises sold.

Heritage purchased the insured premises at a foreclosure sale held on July 7, 1986, and received a deed to the property on July 22, 1986.

The Whites remained in the house after the foreclosure sale despite demands from Heritage that they vacate the premises. After Heritage began eviction proceedings, the Whites entered into a contract to purchase the house from Heritage for $60,000 within 60 days from November 22, 1986. The contract, which allowed the Whites to remain in possession of the property and required them to maintain homeowner's insurance on the house, was later extended and set to expire on February 22, 1987.

When the Whites defaulted on the contract after failing to obtain funds with which to purchase the property, Heritage notified Mrs. White on February 23, 1987, that "the contract had expired" and that it intended to reinstitute eviction proceedings in the event they did not "voluntarily leave the house."

The house burned down the next day. The origin of the fire is unknown.

Neither the Whites nor Heritage ever notified SCIC before the fire of Heritage's purchases of the property at the foreclosure sale and of the Whites' occupation of the premises as tenants. SCIS learned of the matters and of First Federal's foreclosure proceedings for the first time after the fire.

## I. SCIC's Appeal

The trial court held that the policy issued the Whites by SCIC protected Heritage as a mortgagee at the time the fire destroyed the insured premises. SCIC challenges this holding, contending that the New York Standard Mortgage Clause, which the trial court seemingly deemed to be the applicable mortgage clause, required Heritage to notify

SCIC of the foreclosure by First Federal of its mortgage, of Heritage's purchase of the insured premises at the foreclosure sale, and of the Whites' occupation of the property as tenants and that Heritage's failure to notify it of these happenings, which were within Heritage's knowledge, voided the policy.[1] We agree.

The standard mortgage clause provides in part as follows:

> *Loss, if any on the property subject to this clause* as specified in the Declarations *shall be payable to the mortgagee* ... as provided herein, as interest may appear, *and this insurance as to the interest of the mortgagee* ... *only therein, shall not be invalidated* by any act or neglect of the mortgagor or owner of the within described property nor *by any foreclosure* ... *relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy;* Provided That in case the mortgagor or owner shall neglect to pay any premium due under this policy the mortgagee ... shall on demand pay the same.
>
> *Provided* also, *That the mortgagee* ... *shall notify this Company of any change of ownership or occupancy or increase of hazard, which shall come to the knowledge of said mortgagee* ... and, unless permitted by this policy, it shall be noted thereon, *and the mortgagee* ... *shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise, this policy shall be null and void.* (Emphasis added.)
>
> This Company reserves the right to cancel this policy at any time as provided by its terms, but, in such case

---

[1] Heritage states in its brief that the "trial [c]ourt found that the policy contains the New York Standard Mortgage Clause." Brief of Respondent at 5. SCIC in its brief suggests that the trial court "impliedly held" the New York Standard Mortgage Clause applied. Brief of Appellant at 11 n. 3. By Exception No. 4, SCIC attacks the trial court's apparent holding that the policy issued the Whites by SCIC incorporated the New York Standard Mortgage Clause set forth on the policy jacket; however, we do not address this issue in view of the result we reach below. In any case, the mortgage clause that SCIC contends is applicable, the one contained in the body of the policy itself, similarly requires the mortgagee to notify SCIC of any change in ownership or occupancy or of any substantial change in risk of which the mortgagee is aware.

this policy shall continue in force for the benefit only of the mortgagee ... for ten days after notice to the mortgagee ... of such cancellation, and shall then cease and this Company shall have the right, on like notice, to cancel this agreement.

. . . .

An insurer's obligation under a policy of fire insurance is defined by the terms of the policy and cannot be enlarged by judicial construction. *McNeely v. South Carolina Farm Bureau Mutual Ins. Co.*, 259 S. C. 39, 190 S. E. (2d) 499 (1972); *Helton v. St. Paul Fire and Marine Ins. Co.*, 286 S. C. 220, 332 S. E. (2d) 776 (Ct. App. 1985); 45 C. J. S. *Insurance* § 915a at 1009-10 (1946). Since SCIC's policy contains, we assume, the standard mortgage clause just quoted, the question of whether SCIC's policy provided coverage to Heritage depends on the terms of that clause as they are applied to the facts outside the policy. 5A J. & J. APPLEMAN, INSURANCE LAW AND PRACTICE § 3402 at 297 (1970). In the absence of ambiguity, the terms of an insurance policy, including those contained in a policy of fire insurance, must be interpreted and enforced according to their plain and ordinary meaning. *Columbia College v. Pennsylvania Ins. Co.*, 250 S. C. 237, 157 S. E. (2d) 416 (1967); *Tobin v. Beneficial Standard Life Ins. Co.*, 675 F. (2d) 606 (4th Cir. 1982).

The standard mortgage clause in question here plainly and unambiguously states that the mortgagee's interest will not be invalidated by a foreclosure of the property insured by the policy, by a change in either the property's title or ownership, or by an occupation of the premises for a more hazardous purpose than allowed by the policy; however, it also clearly and unambiguously obligates the mortgagee to notify the insurer of any change of ownership, occupancy, or increase of hazard that comes to the mortgagee's knowledge and clearly and unambiguously requires the mortgagee to pay on demand the premium for any increased hazard. An obvious purpose of the notice provision contained in the clause's second proviso is to allow the insurer, in this case SCIC, an opportunity to assess the change, determine its effect on the risk being insured, and, if need be, to adjust the premium accordingly. *Independent Fire Ins. Co. v. NCNB*

*Nat'l Bank of Florida,* 517 So. (2d) 59 (Fla. Dist. Ct. App. 1987); *Consolidated Mortgage Corp. v. American Security Ins. Co.,* 69 Mich. App. 251, 244 N. W. (2d) 434 (1976).

Notwithstanding Heritage's knowledge of its own purchase of the insured premises at the sale prompted by the foreclosure of First Federal's mortgage and Heritage's knowledge of the Whites' occupancy of the property as its tenants, Heritage failed to notify SCIC, as it was required to do under the standard mortgage clause, of these events. Heritage's failure to comply with its obligations under the policy, therefore, renders the insurance provided thereby null and void as to its interest and serves to relieve SCIC of any duty to pay the insurance provided by the policy. *Rio Grande National Life Ins. Co. v. Hardware Dealers Mutual Fire Ins. Co.,* 209 S. W. (2d) 654 (Tex. Civ. App. 1948); *Phoenix Mutual Life Ins. Co. v. Aetna Ins. Co.,* 166 Tenn. 126, 59 S. W. (2d) 517 (1933); *Southern States Fire & Casualty Ins. Co. v. Napier,* 22 Ga. App. 361, 96 S. E. 15 (1918); 10A COUCH ON INSURANCE (2d) § 42:735 at 767-78 (Rev. ed. 1982).

## II. Whites' Appeal
### A.

The trial court found that the Whites had no insurable interest in the dwelling when it was destroyed by fire. The Whites, however, contend that they had such an interest in the dwelling because their contract with Heritage to repurchase the property gave them an equitable interest in the dwelling.

Although the Whites had contracted with Heritage to buy back the property, the contract had expired and the Whites had been asked by Heritage to vacate the premises. The expiration of the Whites' contract prior to the fire to repurchase the property terminated whatever insurable interest the Whites had in the dwelling by virtue of the contract. *Commercial Union Fire Ins. Co. v. Parvin,* 279 Ala. 645, 189 So. (2d) 330 (1966); 4 J. & J. APPLEMAN, INSURANCE LAW AND PRACTICE § 2241 at 155 (1969).

### B.

The Whites also contend that the trial court erred in not holding that the policy is severable and thus covered prop-

erty in which they clearly had an insurable interest, namely, the contents of their home. This contention has merit.

South Carolina follows the majority rule that a contract of insurance is divisible where real and personal property are each insured under the same contract. *Trakas v. Globe & Rutgers Fire Ins. Company of New York,* 141 S. C. 64, 139 S. E. 176, 53 A.L.R. 1119 (1927); *Spradley v. Georgia Home Ins. Co.,* 112 S. C. 151, 98 S. E. 285 (1919) (dicta); 4 J. & J. APPLEMAN, *supra* § 2372 n. 23 at 400.

This is the case here. For a single premium of $674, SCIC's policy separately insured the Whites' dwelling and personal property for $80,000 and $40,000, respectively. *See Evans v. Century Ins. Co.,* 201 S. C. 273, 22 S. E. (2d) 877 (1942), *overruled on other grounds, Johnson v. South State Ins. Co.,* 288 S. C. 239, 341 S. E. (2d) 793 (1986) (fire insurance policy covering real estate and personal property and insuring store building for $600, merchandise for $300, and furniture and fixtures for $200 held to be divisible); 44 C. J. S. *Insurance* § 336 at 1285 (1945) (noting authorities, including South Carolina, holding that an insurance contract is divisible, notwithstanding the premium is entire, where the amount of insurance is distributed over several distinct items).

Because of our holding that the policy is severable, we remand to the trial court the issue, left unaddressed by it, of whether the Whites' failure to notify SCIC of the foreclosure sale and of the resulting change in ownership of the insured premises constituted a breach of policy so as to void all coverage under the policy. *But see Johnson v. South State Ins. Co., supra* 341 S. E. (2d) at 794 (where fraud defeated an insured's claim under a fire insurance policy for loss of contents to the insured's home, the insured could still recover on a claim for loss of dwelling and for additional living expenses). The trial court shall determine this issue on the existing record. *See Parker v. South Carolina Public Service Comm'n,* 288 S. C. 304, 307, 342 S. E. (2d) 403, 405 (1986) ("Unless this court provides for the taking of additional evidence, no party may afford itself two bites at the apple.").

Affirmed in part, reversed in part, and remanded.

SANDERS, C. J., and SHAW, J., concur.