1937

BENTON & RHODES, INC., Respondent v. Kenneth Henry Edmond BODEN, An Underwriter at Lloyd's, London, on behalf of Himself and all those other Lloyd's underwriters subscribing to Insurance Policy Number NPC 33309, Appellant.

(426 S.E. (2d) 823)

Court of Appeals

*Clifford L. Welsh* and *Mary Ruth M. Baxter,* Conway, *for appellant.*

*A.G. Solomons, Jr.* and *Winston A. Lawton, Jr.,* Estill, *for respondent.*

Heard Nov. 12, 1992.

Decided Jan. 11, 1993.

SHAW, Judge:

Respondent, Benton & Rhodes, Inc., brought this action against appellant, insurer, alleging breach of an insurance contract and bad faith refusal to pay benefits arising from the denial of coverage under an insurance policy. The case was tried before a jury which returned a verdict for respondent. The insurer appeals. We affirm in part and reverse in part.

The record reveals the following. On November 18, 1988, respondent, a wood and pulp producing business, entered into a contract of insurance covering, among other items, a piece of equipment called a fellerbuncher. The insurance was obtained through Mr. William Bryant, who took an application from respondent and forwarded it to a broker for Lloyd's of London. The policy was issued under the general cover of Lloyd's of London or underwriters at Lloyd's. The master policy remained in London and neither Mr. Bryant nor the respondent ever read it. Although respondent admits receiving a cover sheet showing the equipment and the amount of coverage, it denies receiving the policy itself or any other documentation relating to it before a loss occurred. There is some indication that Mr. Bryant attached what is known as an NPC (Nicolls Pointing Coulson Ltd.) contractor's equipment form to all cover notes as a matter of office practice, but his testimony is confusing as to whether he sent this to respondent. The NPC form contained the following language:

> This entire policy shall be void if the assured has concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof; or in the case of any fraud or false swearing by the as-

sured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

Several months after the insurance contract was entered, respondent agreed to sell the fellerbuncher and some other equipment to Mr. Marion Brooks, a logger who had been producing wood for respondent for a number of years. Mr. Brooks had lost some of his own equipment and respondent agreed to sell him the fellerbuncher in order to increase production. Mr. Benton, a shareholder of Benton & Rhodes, Inc., testified they agreed to sell the equipment to Mr. Brooks and it would be his when he finished paying for it. He further stated he and the other shareholder, Mr. Rhodes, went to the bank with Mr. Brooks and obtained a $150,000 loan for the purchase of the equipment. All three gentlemen signed as co-makers of the note dated February 2, 1989. Additionally, they all signed a security agreement in favor of the bank.

Respondent executed a bill of sale to Mr. Brooks for the equipment dated February 2, 1989. Mr. Brooks signed a document entitled "Security Agreement" dated January 13, 1989 which purported to give respondent a security interest in the equipment. This security agreement was not signed by respondent.

Respondent made monthly payments on the loan and would deduct a weekly amount of $1,175 from Mr. Brooks' production account. When Mr. Brooks' production was too low to cover the $1,175 deduction, respondent would continue to make the note payments and make up the shortfall when his production was back up. At the time of the trial, the note was current and Mr. Brooks was one payment behind in his obligation to respondent.

On September 13, 1989, fire destroyed the fellerbuncher and shortly thereafter, respondent made a claim under the policy. The appellant investigated and denied the claim. Respondent brought this action alleging breach of contract and bad faith refusal to pay. Appellant answered denying respondent had an insurable interest and asserting the policy was void based on concealment of the material fact that there was a change of ownership thereby changing the risk involved. The trial judge directed a verdict for appellant on the bad faith cause of action. The cause of action for breach of contract

was submitted to the jury which returned a verdict for respondent.

Appellant first contends the trial judge erred in failing to grant its motions for directed verdict, judgment notwithstanding the verdict and new trial as there was no evidence presented at trial showing respondent had an insurable interest in the equipment at the time of the loss and there was no evidence of damages sustained by the respondent. We disagree.

In *Powell v. Insurance Company of North America*, 285 S.C. 588, 330 S.E. (2d) 550 (Ct. App. 1985), this court reiterated the definition of "insurable interest" set forth by our Supreme Court in *Crook v. Hartford Fire Insurance Co.*, 175 S.C. 42, 178 S.E. 254 (1935) as follows:

> It may be said, generally, that any one has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction. An insurable interest in property is any right, benefit or advantage arising out of or dependent thereon, or any liability in respect thereof, or any relation to or concern therein of such a nature that it might be so affected by the contemplated peril as to directly damnify the insured.

44 C.J.S. *Insurance* § 180 (1945) provides:

> Any title to, or interest in, property, whether legal or equitable, and however slight or uncertain in duration, will support a contract of fire insurance on the property. The term "interest," as used in the phrase "insurable interest," is not limited to property or ownership in the subject matter of the insurance; where the interest of insured in, or his relation to, the property is such that he will, or may, be benefited by its continued existence or suffer a direct pecuniary loss from its destruction or injury by fire, his contract of insurance will be upheld, although he has no title, either legal or equitable, no property right or interest, no estate, no lien, and no possession or right of possession. Thus an insurable interest in property may arise from some liability which insured incurs with relation thereto, although he is not in possession of the property, and has no interest therein beyond the dan-

ger of pecuniary damage from the loss of the property by reason of such assumed liability. Such liability may arise by force of statute or by contract, or may be fixed by law from the obligations which insured assumes.

Further, 43 Am. Jur. (2d) *Insurance* § 943 (1982) states:

The principle may be stated generally that anyone has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction. Policies will be maintained where it is clear that the party insured had an interest which would be injured in the event the peril insured against should happen. It is not necessary to constitute an insurable interest that the interest be such that the event insured against would necessarily subject the insured to loss; it is sufficient that it might do so, and that pecuniary injury would be the natural consequence. Moreover, an insurable interest in property does not necessarily imply a property interest in, or a lien upon, or possession of, the subject matter of the insurance, and neither the title nor a beneficial interest is requisite to the existence of such an interest, it is sufficient that the insured is so situated with reference to the property that he would be liable to loss should it be injured or destroyed by the peril against which it is insured. For instance, although a person has no title, legal or equitable, in the property, and neither possession nor right to possession, yet he has an insurable interest therein if it is primarily charged in either law or equity with a debt or obligation for which he is secondarily liable.

And 43 Am. Jur. (2d) *Insurance* § 960 (1982) provides:

A mortgagee of real or personal property has an insurable interest to the extent of the mortgage debt, *even after he has assigned the mortgage, if he has guaranteed its payment or is liable upon his indorsement* of the notes secured by the mortgage. (Emphasis added.)

In *Reid v. Hardware Mutual Insurance Company of Carolinas*, 252 S.C. 339, 166 S.E. (2d) 317 (1969), our Supreme

Court held where the insured under a fire policy sold her house for consideration which included purchaser's assumption of the mortgage, she had an insurable interest in the property destroyed by fire after the sale as she remained liable for the payment of a note which the mortgage secured. The court stated:

> The insurable interest that a mortgagor has in real property is not defeated by a voluntary sale and conveyance of the premises as long as he is personally liable for the payment of the mortgage debt.

§ 960 of the above quoted *American Jurisprudence* cite makes no distinction between real and personal property and we find no reason for any different treatment. Although it may be argued that appellant is not a mortgagee of the fellerbuncher equipment, the record is clear that, for all intents and purposes, the result was the same, for Mr. Brooks received the use of the equipment under a contract of purchase, the bank loaned the money for the purchase maintaining a security interest in the equipment and the respondent signed the note as a co-maker thus making it liable for payment of the debt.

At any rate, it is clear under the definition quoted from *Powell* and the general definitions and examples from the legal encyclopedias that respondent has an insurable interest in the property arising from the benefit it derived from the existence of the equipment, the loss from its destruction and its liability for any such loss. Arguably, respondent derived a benefit from the existence of the equipment in that the use of the equipment by Mr. Brooks enabled him to make payments on the equipment which respondent was liable for in the event Mr. Brooks defaulted. Clearly, respondent suffered a loss as it was "so situated with reference to the property that [it] would be liable to loss should [the equipment] be injured or destroyed by the peril against which it is insured." In reaching this conclusion, we expressly note that we do not and need not rely on any alleged security agreement between Mr. Brooks and respondent, for respondent's liability on the note under the facts of this case is enough to bring it within the ambit of an insurable interest.

As to appellant's argument regarding the failure to show damages, we find this to be patently without merit. This is a suit to recover a benefit under the terms of a policy. Appellant cites no case for the proposition that an insured must prove actual damages suffered instead of the amount due under the contract of insurance. Here, it was undisputed that the fellerbuncher was insured for $40,000. There is evidence of this value at the time of destruction of the equipment. The jury verdict was amended by the trial judge to reflect this amount. We find no error.

Appellant next contends the trial judge erred in failing to grant its motion for directed verdict and judgment notwithstanding the verdict asserting the evidence showed respondent concealed the material fact of the change of ownership of the logging equipment, thus voiding the policy. A thorough review of the record reveals that, although appellant gave much attention to the issue of concealment of a material fact, he never moved for a directed verdict on this issue at trial. A motion for a directed verdict is a prerequisite for a subsequent motion for a judgment notwithstanding the verdict. *McCray v. State*, 271 S.C. 185, 246 S.E. (2d) 230 (1978). Rule 50(a), SCRCP states that a directed verdict motion must state specific grounds. Having failed to make a motion for directed verdict on this ground, appellant is precluded from asserting this argument on appeal.

Appellant also contends the trial judge erred in the admission of certain evidence. Specifically, it argues error in the admission of the purported security agreement between Mr. Brooks and respondent and in the admission of testimony by Mr. Rhodes that the proceeds of the insurance would be used to reduce the indebtedness on the note. We disagree.

The admission of evidence is a matter addressed to the sound discretion of the trial judge and his ruling will not be disturbed absent a clear abuse of discretion amounting to error of law. *Hofer v. St. Clair*, 298 S.C. 503, 381 S.E. (2d) 736 (1989).

Appellant objected to the admission of the security agreement on the grounds it was incomplete in that it was not executed and it did not relate to the deal that actually took place since it was dated before the sale took place. We first note appellant cites no law requiring that a se-

curity agreement be signed by the secured party. It is undisputed that it was in fact signed by Mr. Brooks. Further, the purported agreement was relevant to the transaction which took place between Mr. Brooks and respondent. It was for the jury to determine what weight to give this evidence, if any at all. Finally, as noted in our discussion on insurable interest, we did not rely on the purported security agreement in finding respondent did in fact have an insurable interest. Thus, we find no prejudice to appellant in the admission of this document. The burden is on the appellant to show both error and prejudice. *Cartee v. Cartee*, 295 S.C. 103, 366 S.E. (2d) 269 (Ct. App. 1988).

As to the testimony of Mr. Rhodes, we find no error, as the record indicates the appellant opened the door to this evidence. We further find no prejudice in its admission.

Appellant also asserts error in the allowance of prejudgment interest. Its entire argument on this issue is that the award of prejudgment interest should be vacated "because the judgment of the lower court should be reversed." In light of our decision, we find no merit to this argument.

■ Finally, appellant contends the trial judge erred in awarding attorney's fees on the basis of S.C. Code Ann. § 38-59-40 (Supp. 1991). We agree.

Under § 38-59-40(1) where an insurer refuses to pay a claim within 90 days after demand, the insurer is liable to pay all reasonable attorney's fees for the prosecution of the case where the trial judge makes a finding "that the refusal was without reasonable cause or in bad faith." During the trial of this case, the judge directed a verdict on respondent's bad-faith cause of action commenting as follows:

Here's a loss, and here's a fair investigation and here's a fair investigator saying look, I think they can prove an insurable interest, but I would defend on the grounds of concealment.

At the end of the trial after respondent requested attorney's fees, the trial judge stated:

Well, I don't think this is improper claim practices, counselor. You know, it's just one of them things. They had a pretty good case, it's just that they couldn't prove it.

\* \* \* \* \*

And I would give them attorney's fees if I could. They've got more money than these fellows but you've just got to do whatever the law is and that's the way I construe the law. If you find something different, give it to me in the next ten days. In the meantime, contact your people and see if they are going to pay it. If they're not, I might just give them attorney's fees and all these other things.

In an "Order for Judgment" following posttrial motions, the trial judge awarded respondent $2,000 in attorney's fees, making no findings but referring to Code § 38-59-40.

Clearly, the trial judge has made no finding that the refusal to pay was without reasonable cause or in bad faith. To the contrary, his comments in granting a directed verdict on the bad faith cause of action and his initial ruling on the request for attorney's fees indicate he found no basis for attorney's fees. Additionally, after a thorough review of the record, we find the insurance company had sufficient grounds for refusing the claim and defending the case. *See Madden v. Pilot Life Insurance Co.*, 272 S.C. 264, 251 S.E. (2d) 196 (1979) (reversing an award of attorney's fees finding the evidence preponderated in favor of the insurance company on that issue).

Affirmed in part and reversed in part.

CURETON and GOOLSBY, JJ., concur.