577 S.E.2d 487

**Stewart BELTON, Appellant,**

v.

**CINCINNATI INSURANCE COMPANY, Respondent.**

**No. 3598.**

Court of Appeals of South Carolina.

Heard Nov. 5, 2002.

Decided Feb. 3, 2003.

Rehearing Denied March 21, 2003.

Frank Anthony Barton and Wayne Floyd, both of West Columbia, for Appellant.

Russell D. Ghent and Mark Trapp, both of Greenville; and S. Jahue Moore, of West Columbia, for Respondent.

CURETON, J.

Stewart Belton filed this action alleging breach of contract and bad faith refusal to pay insurance proceeds. Cincinnati Insurance Company (Cincinnati) moved for summary judgment. The circuit court granted Cincinnati's motion. Belton appeals. We reverse and remand.

## FACTS

Stuart Belton and Grady Query signed an agreement captioned "Lease Option to Buy" dated October 5, 1997. The agreement was a simple handwritten contract specifying a purchase price of $280,000 with a $50 down payment. The contract further provided for a note for $280,000 at 8% interest and lease payments of $1200 per month with eighty percent of each payment to be applied to the purchase price. The note was never executed.

The contract further provided the purchase was to be completed by November 1, 2002 with payment of the balance due at that time. The contract allowed Belton to improve the property before the closing only with Query's approval.

Belton fell behind almost immediately on his lease payments. On January 16, 1998, Belton wrote Query claiming the November 1997 payment was "moved up to December due to a miscommunication." Belton also claimed he was repairing the roof in lieu of rental payments for January and February. Query wrote Belton a letter on January 23, 1998, stating he was terminating the agreement and advising him to immediately vacate the premises. Belton did not vacate, and Query wrote another letter on February 18, 1998, again advising Belton he was terminating the agreement and advising Belton to vacate the premises.

Belton did not vacate, and Query filed a rule to vacate or show cause dated February 25, 1998. Query alleged Belton

had not paid December, January, or February lease payments. Belton also failed to make payments in March and April of 1998. By petition dated April 24, 1998, Belton filed for bankruptcy and received protection from eviction due to the resulting automatic stay.

On July 24, 1998, Query filed a motion in the bankruptcy court seeking to lift the stay. Belton, as advised by his bankruptcy attorney, sought to obtain property insurance on the building. On August 5, 1998, the Livingston Agency issued a binder from Cincinnati. On August 14, 1998, an intentional fire destroyed the building. The bankruptcy court granted Query's motion to lift the automatic stay on August 21, 1998.

Belton filed a claim with Cincinnati for insurance proceeds on the building. Cincinnati refused to pay the claim based upon the absence of a binding insurance contract and fraud. Belton sued Cincinnati asserting breach of contract and bad faith refusal to tender insurance proceeds. Cincinnati moved for summary judgment on September 8, 2000. A hearing on the motion was held on October 23, 2000. The trial court granted Cincinnati's motion for summary judgment on all of Belton's causes of action, ruling that Belton's insurance contract was invalid at the time of its making and at the time of the fire because Belton did not have an insurable interest in the building at either time.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *Conner v. City of Forest Acres*, 348 S.C. 454, 462, 560 S.E.2d 606, 610 (2002). When determining whether triable issues of fact exist, all evidence and inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party. *Osborne v. Adams*, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001).

## LAW/ANALYSIS

Belton contends the circuit court erred in granting summary judgment on his breach of contract and bad faith refusal to pay insurance proceeds causes of action. We agree.

■■■ In order to have an insurable interest in property under contract for purchase, there must be a valid contract in existence both at the time the policy was issued and became effective, and at the time of the loss. *South Carolina Ins. Co. v. White*, 301 S.C. 133, 138, 390 S.E.2d 471, 475 (Ct.App.1990); *Powell v. Ins. Co. of North America*, 285 S.C. 588, 590, 330 S.E.2d 550, 552 (Ct.App.1985). When a contract to purchase property terminates, the purchaser's insurable interest is extinguished. *White*, 301 S.C. at 138, 390 S.E.2d at 471. Where an insurable interest does not exist at the time the contract for insurance was made, the insurance contract is void from its inception. *Abraham v. New York Underwriters Ins. Co.*, 187 S.C. 70, 78, 196 S.E. 531, 534 (1938).

The trial court concluded the entire contract terminated upon Query's attempted cancellation of the contract by letters dated January 23 and February 18, 1998. The contract did not provide terms for ejectment. Accordingly, the statutory grounds for ejectment of a tenant under a lease would apply. Section 27–37–10 of the South Carolina Code provides: "(A) The tenant may be ejected upon application of the landlord or his agent when (1) the tenant fails or refuses to pay the rent when due or when demanded, (2) the term of tenancy or occupancy has ended, or (3) the terms or conditions of the lease have been violated." S.C.Code Ann. § 27–37–10 (Supp. 2001). "[T]he Legislature enacted section 27–37–10 to give the lessor a right not recognized at common law, the right to terminate a lease in the absence of a contractual provision." *Kiriakides v. United Artists Communications, Inc.*, 312 S.C. 271, 275–76, 440 S.E.2d 364, 366 (1994). Therefore, even without specific terms for ejectment in the parties' contract, the application of section 27–37–10 may have been sufficient to evict Belton and terminate the lease portion of the contract.

■■■ However, the termination of the lease would not *ipso facto* terminate Belton's option to purchase the property. The determination of whether terms in a contract are severable depends on the intent of the parties, which requires a factual determination. *Williams v. Riedman*, 339 S.C. 251, 277, 529 S.E.2d 28, 41 (Ct.App.2000). Belton testified in deposition he recognized the contract was a lease with an option to purchase but believed the right to purchase the property existed even at the time of the hearing. Query acknowledged he remained

willing to honor Belton's option to purchase the property. We find a factual issue exists as to whether Belton's right to purchase the property under the option was severable from his rights as a lessee. Accordingly, we reverse the trial court's finding that the entire contract terminated due to Belton's failure to make lease payments.

The trial court further found, however, that even if the option was severed from the lease, Belton had no insurable interest as he held a mere expectancy to purchase property that did not qualify as an insurable interest.

In *Benton & Rhodes, Inc. v. Boden,* this court defined an insurable interest:

> It may be said, generally, that any one has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction. An insurable interest in property is any right, benefit or advantage arising out of or dependent thereon, or any liability in respect thereof, or any relation to or concern therein of such a nature that it might be so affected by the contemplated peril as to directly damnify the insured.
>
> * * *
>
> The term 'interest,' as used in the phrase 'insurable interest,' is not limited to property or ownership in the subject matter of the insurance. . . . [A]n insurable interest in property may arise from some liability which insured incurs with relation thereto. . . . Such liability may arise by force of statute or by contract, or may be fixed by law from the obligations which insured assumes.
>
> * * *
>
> Moreover, an insurable interest in property does not necessarily imply a property interest in, or a lien upon, or possession of, the subject matter of the insurance, and neither the title nor a beneficial interest is requisite to the existence of such an interest, it is sufficient that the insured is so situated with reference to the property that he would be liable to loss should it be injured or destroyed by the peril against which it is insured. For instance, although a person has no title, legal or equitable, in the property, and

neither possession nor right to possession, yet he has an insurable interest therein if it is primarily charged in either law or equity with a debt or obligation for which he is secondarily liable.

310 S.C. 400, 403–04, 426 S.E.2d 823, 825–26 (Ct.App.1993) (internal citations omitted).

There is no South Carolina case expressly considering the insurable interest of a party holding an option to purchase. When there is no South Carolina case directly on point, our court may look to other jurisdictions for persuasive authority. *See Williams v. Morris*, 320 S.C. 196, 200, 464 S.E.2d 97, 99 (1995) (applying the law of foreign jurisdictions in the absence of governing South Carolina law).

At least one legal commentator has concluded that a party with an option to purchase property has an insurable interest in the property. *See* Lee R. Russ & Thomas F. Segalla, 3 *Couch on Insurance 3d* § 42:64, at 42–80 (1997) ("The holder of an option to purchase has an insurable interest in the property to which the option extends."). *See also* 43 Am. Jur.2d *Insurance* § 965 (1982) ("If the price at which one has an option to purchase property is less than the market value of the property, he has such an interest in the property as to allow him to insure it. An absolute and exclusive option to purchase real estate confers an equitable title upon the owner thereof which will support insurance taken out by him covering buildings upon the premises.").

However, this general proposition is not unanimously accepted. *See* 44 C.J.S. *Insurance* § 229 (1993) ("One in possession under an option to purchase has an insurable interest in the property ... providing the option is timely exercised, but it has been held that an unexercised option is a mere expectancy and does not qualify its holder for an insurable interest."). *See generally* Jeffrey F. Ghent, Annotation, *Insurable Interest in Property of Lessee with Option to Purchase Property*, 74 A.L.R.4th 883 (1989) (collecting and analyzing cases in which courts have discussed whether a lessee with an option to purchase property has an insurable interest in the property).

We recognize the conflict among jurisdictions regarding this issue. *See Neuman v. Travelers Indem. Co.*, 271 Md. 636, 319 A.2d 522, 531 (1974) (stating that a "lessee has an insurable

interest in property leased under certain circumstances, as . . . where he has an option to purchase."); *G.M. Battery & Boat Co. v. L.K.N. Corp.*, 747 S.W.2d 624, 625–27 (Mo.1988) (en banc) (rejecting the argument that a lessee with only an unexercised option to purchase has no insurable interest in the leased property); *B.J. Morris v. Clay County Mut. Ins. Co.*, 1996 WL 251832 (Neb.Ct.App.1996) (finding summary judgment based on lack of insurable interest inappropriate against plaintiffs who had been making payments on an oral option to purchase property). *But see Allstate Ins. Co. v. Thompson*, 164 Ga.App. 508, 297 S.E.2d 520, 522 (1982) (finding an option to purchase land before exercise of the option is not an insurable interest); *Harris v. North Carolina Farm Bureau Mut. Ins. Co.*, 91 N.C.App. 147, 370 S.E.2d 700, 703 (1988) (finding an unexercised option to purchase is a mere expectancy and does not qualify as an insurable interest); *Gossett v. Farmers Ins. Co. of Washington*, 133 Wash.2d 954, 948 P.2d 1264, 1272 (1997) (en banc) (finding that prior to the exercise of the option, an optionee under an ordinary option contract, has no insurable interest).

■■■■ We conclude a party holding an option to purchase has an insurable interest. Under South Carolina law, however, a party may not recover insurance proceeds in excess of their interest in the property. *Singletary v. Aetna Cas. & Sur. Co.*, 316 S.C. 199, 202, 447 S.E.2d 869, 870 (Ct.App.1994). We thus make no determination regarding the extent of Belton's insurable interest. It may well be minimal or nonexistent. We find, however, the determination of the extent of the interest is a question of fact.

Accordingly, we reverse the order granting summary judgment on Belton's causes of action for breach of contract and bad faith refusal to pay insurance proceeds and remand for proceedings consistent with this opinion.[1]

**REVERSED AND REMANDED.**

ANDERSON, J. concurs.

HEARN, C.J., dissents in a separate opinion.

---

1. In light of our disposition, we need not address Belton's remaining arguments.

HEARN, C.J., dissenting:

Because I believe an unexercised option to purchase real estate does not qualify as an insurable interest, I respectfully dissent. As the majority noted, South Carolina appellate courts have yet to consider this particular issue. However, our courts have emphatically stated that to have an insurable interest in property, one must derive a benefit from its existence or suffer a loss from its destruction. *Benton & Rhodes, Inc., v. Boden*, 310 S.C. 400, 403, 426 S.E.2d 823, 825 (Ct.App.1993).

An option to purchase property imposes no obligation on the optionee. *See Faulkner v. Millar*, 319 S.C. 216, 220, 460 S.E.2d 378, 380 (1995) ("[W]hile [a contract to sell and purchase real property] creates a mutual obligation ..., [an] option merely gives the right to purchase, at a fixed price, within a fixed time, without imposing any obligation to do so.") As an optionee with no obligation to exercise his option, Belton did not stand to gain a pecuniary benefit or suffer a pecuniary loss because of the fire. Therefore, his unexercised option to purchase was a mere expectancy and did not qualify as an insurable interest. *See Harris v. North Carolina Farm Bureau Mutual Ins. Co.*, 91 N.C.App. 147, 370 S.E.2d 700, 703 (1988); *Travelers Indem. Co. v. Duffy's Little Tavern, Inc.*, 478 So.2d 1095, 1096 (Fla.App. 5th Dist.1985), *rev. denied*, 488 So.2d 68 (Fla.1986); *Erie–Haven, Inc. v. Tippmann Refrigeration Const.*, 486 N.E.2d 646, 650 (Ind.App.3d Dist.1985); *Allstate Ins. Co. v. Thompson*, 164 Ga.App. 508, 297 S.E.2d 520, 522 (1982); *Vendriesco v. Aetna Cas. & Surety Co.*, 68 A.D.2d 946, 414 N.Y.S.2d 64, 65 (1979); *Christ Gospel Temple v. Liberty Mut. Ins. Co.*, 273 Pa.Super. 302, 417 A.2d 660, 663 (1979), *cert. denied sub nom., Presbyterian Church of Harrisburg v. Liberty Mut. Ins. Co.*, 449 U.S. 955, 101 S.Ct. 362, 66 L.Ed.2d 220 (1980). *See also, Gossett v. Farmers Ins. Co. of Washington*, 133 Wash.2d 954, 948 P.2d 1264 (1997) (en banc) ("[H]ope and expectations of acquiring the property in the future are insufficient to constitute an insurable interest.")

Two fundamental purposes of the doctrine of insurable interest are to prevent insurance contracts from becoming gambling devices and to discourage the intentional destruction of property. Robert E. Keeton & Alan I. Widiss, *Insurance*

*Law, A Guide to Fundamental Principles, Legal Doctrines, and Commercial Practices, Practitioner's Edition* § 3.1(c), at 136–138 (1988). Allowing the holder of an option to purchase insurance prior to his exercise of the option invites the very misbehavior the doctrine of insurable interest endeavors to prevent. Belton's situation is the perfect case in point. Here, Belton purchased insurance after he failed to make numerous payments toward his lease with option to purchase, after he received notice that his lease had been terminated, and after he was asked to vacate the premises. For Belton to receive any money now that the property is destroyed would put him in a better position than he was in prior to the fire. Such a result, in my opinion, could well encourage fraudulent and even criminal conduct.

The majority cites *Neuman v. Travelers Indem. Co.*, 271 Md. 636, 319 A.2d 522 (Md.1974), for the proposition that the holder of an unexercised option to purchase property has an insurable interest in that property. I decline to read *Neuman* so broadly. In *Neuman*, the lessees of a warehouse had an insurance policy that covered tangible property. During the lease, a wall of the warehouse collapsed, and the lessees argued that their loss of use of the warehouse for the remainder of the lease's term ought to be covered by their insurance because it constituted tangible property. Although the issue in *Neuman* did not involve the insurability of an option to purchase, the court did state that it was "familiar with the fact that **[a] lessee** has an insurable interest in property leased under certain circumstances, as where he has covenanted to return it in good order at the end of the term, has orally agreed to keep the premises insured, or where he has an option to purchase." *Id.* at 531 (citing 3 G. Couch, Cyclopedia of Insurance Law § 24:60 (2d ed. R. Anderson 1960)) (emphasis added). Notably, this statement was not outcome-determinative in the case. Moreover, the Maryland court only refers to a *lessee* who has an option to purchase, not someone like Belton who was merely a holder of an option. Finally, the statement does not shed any light on whether the holder of an *unexercised* option to purchase property would have an insurable interest.

The majority next cites *G.M. Battery & Boat Co. v. L.K.N. Corp.*, 747 S.W.2d 624 (Mo.1988) (en banc) (5–2 decision), to

support its conclusion that Belton's option to purchase gave him an insurable interest in the property. However, L.K.N.'s lease with option to purchase is significantly different from Belton's lease. In *G.M. Battery & Boat, Co.*, the terms of L.K.N.'s lease required L.K.N. to obtain an insurance policy naming G.M. Battery as the loss payee. L.K.N. did obtain insurance, but it named itself as the loss payee. When a fire destroyed the building, L.K.N.'s insurance carrier refused to pay for any part of the building loss, claiming that L.K.N. had no insurable interest in the building. The Supreme Court of Missouri disagreed and found that because L.K.N. "had bound itself to furnish insurance payable to GMB" and because L.K.N. "stood to lose the remaining six months on the lease, as well as the utility of the option and the rent credit on the option price," it indeed had an insurable interest in the property. *Id.* at 627. Unlike L.K.N.'s lease, Belton's lease did not require him to purchase insurance. Furthermore, because Belton's lease was already terminated, he did not stand to lose any time remaining on the lease as was the case for L.K.N.

Finally, the majority relies on *Morris v. Clay County Mutual Ins. Co.*, 1996 WL 251832 (Neb.Ct.App.1996), a case which has not been approved for publication. In the *Morris* case, the lower court granted the insurance company's motion for summary judgment. The appellate court reversed, finding that because the Morrises presented evidence that they had an option contract to buy property **and had been performing that contract by making $75 monthly payments,** a finder of fact could determine the Morrises had an insurable interest in the property. *Id.* at *4 (emphasis added). Unlike the Morrises, Belton had not been performing on his lease with option to purchase.

Taking into consideration the purpose behind the doctrine of insurable interest and cases from other jurisdictions, I do not believe Belton had an insurable interest. Belton's lease was terminated months before he obtained fire insurance. At the time of the fire, Belton merely had an obligation-free, unexercised option to purchase the building. Therefore, Belton derived no benefit from the property's existence nor suffered any loss upon its destruction. Accordingly, Belton had no

insurable interest, and the judgment of the trial court should be affirmed.