556 S.E.2d 713

**Bonnie JONES, Appellant,**

v.

**EQUICREDIT CORPORATION OF SOUTH CAROLINA, (a subsidiary of Equicredit Corporation of America) and TIG Premier Insurance Company, Respondents.**

**No. 3407.**

Court of Appeals of South Carolina.

Heard Sept. 6, 2001.

Decided Nov. 19, 2001.

Mary P. Miles, of Columbia, for appellant.

Mason D. Salisbury, of Charleston, for respondents.

PER CURIAM:

Bonnie Jones brought this action against Equicredit Corporation of South Carolina (Equicredit) and TIG Premier Insurance Company (TIG)[1] alleging conversion, breach of contract, and bad faith refusal to pay insurance benefits. The master-in-equity granted Equicredit summary judgment on all causes of action. Jones appeals. We affirm.

---

[1]. Although TIG is named as a party to the action and as a respondent in this appeal, the company did not make a formal appearance in the action.

## FACTS/PROCEDURAL HISTORY

In May 1984 Mr. Jones borrowed $14,981.52 from Freedlander Inc., The Mortgage People, securing the loan with a second mortgage on his house. In October 1987 Freedlander assigned Jones's note and mortgage to the Federal National Mortgage Association (Fannie Mae). Fannie Mae contracted with Old Stone Credit Corporation (OSCC), Equicredit's predecessor in interest, to service the loan.[2]

By August 1990 Jones's mortgage was delinquent. In a modification agreement, Jones and Fannie Mae increased the loan's principal balance by all past due amounts, extended the term of the loan, reduced the interest rate, and established a new monthly payment amount.

In 1992 OSCC filed a foreclosure action. No deficiency judgment was requested in the foreclosure complaint. Jones defaulted. The master issued a foreclosure decree on January 13, 1993. On January 27, 1993, Jones filed for bankruptcy, staying the foreclosure sale. In April 1994 Fannie Mae and Jones again restructured the debt. The principal balance on the loan was increased to $32,589.32 to include past due amounts, the term of the loan was further extended, and the monthly payments were lowered. Jones immediately failed to make payments under the restructured agreement.

In June 1994 Jones received a discharge of debts in bankruptcy. In August 1994 the master entered an Order to Restore and Proceed with Foreclosure. In addition, the master entered a supplemental order finding Jones's debt after the bankruptcy totaled $35,437.36. Jones filed a second bankruptcy action, again staying the foreclosure sale. Equicredit obtained relief from the stay. In January 1996 a second Order to Restore and Proceed with Foreclosure was entered. Jones filed a third bankruptcy, once again staying the foreclosure sale.

On April 18, 1996, fire damaged the house on the mortgaged property. The house was insured under two policies: one associated with the first mortgage and the other associated with the second mortgage. The damage was appraised for

---

**2.** Equicredit succeeded to the interest of OSCC in 1993 and thereafter became the servicing agent for Fannie Mae.

insurance purposes at approximately $41,000. Each of the insurance companies assumed responsibility for payment of one-half of the damage.

With the insurance proceeds of approximately $21,000, the first mortgage lien-holder retired the first mortgage debt of approximately $5,000 and distributed the remaining proceeds to Jones. TIG, the insurer connected with the second mortgage, tendered payment of approximately $21,000 in the form of a check payable to Equicredit and Jones as co-payees. TIG mailed the check to Equicredit. Equicredit claimed entitlement to the entire proceeds to apply against Jones's remaining balance on the Fannie Mae judgment.

On December 12, 1996, Jones's third bankruptcy action was dismissed. On March 7, 1997, the property was sold at a foreclosure sale for a bid of $500 made by Equicredit on behalf of Fannie Mae.[3] Jones's debt to Fannie Mae at the time exceeded $46,800. In July or August of 1997, Fannie Mae sold the property to a third party for $12,500.

Jones instituted this action seeking recovery of the insurance proceeds and alleging conversion, breach of contract, and bad faith refusal to pay insurance benefits. Equicredit moved for summary judgment. After a hearing, the master determined Equicredit was entitled to the insurance proceeds and granted Equicredit summary judgment on all of Jones's causes of action. Jones appeals.

## STANDARD OF REVIEW

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *SSI Med. Servs., Inc. v. Cox*, 301 S.C. 493, 497, 392 S.E.2d 789, 792 (1990). In determining whether any triable issue of fact exists such as to preclude summary judgment, the evidence and all inferences reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Id.* An appellate court reviews the trial court's order granting summary judgment under the same standard applied by the

---

3. On June 3, 1997, the property was deeded to Equicredit. Equicredit asserts its name on the deed was a scrivener's error, and on July 25, 1997, Equicredit deeded the property to Fannie Mae.

trial court pursuant to Rule 56, SCRCP. *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000).

## DISCUSSION

### I. Insurable Interest

Jones argues the master erred in ruling that Equicredit was entitled to retain the insurance proceeds. Jones contends Equicredit did not have an insurable interest in the property after the foreclosure sale. Jones avers Equicredit was an assignee of Fannie Mae and thus had only a mortgagee's insurable interest. Jones argues Fannie Mae's interest in the insurance proceeds terminated when the property was sold at the foreclosure sale without the right to a deficiency judgment, and Equicredit's insurable interest as an assignee likewise terminated. We disagree.

In *Benton & Rhodes, Inc. v. Boden,* this court defined an insurable interest:

It may be said, generally, that any one has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction. An insurable interest in property is any right, benefit or advantage arising out of or dependent thereon, or any liability in respect thereof, or any relation to or concern therein of such a nature that it might be so affected by the contemplated peril as to directly damnify the insured.

... The term 'interest,' as used in the phrase 'insurable interest,' is not limited to property or ownership in the subject matter of the insurance.... [A]n insurable interest in property may arise from some liability which insured incurs with relation thereto.... Such liability may arise by force of statute or by contract, or may be fixed by law from the obligations which insured assumes.

... Moreover, an insurable interest in property does not necessarily imply a property interest in, or a lien upon, or possession of, the subject matter of the insurance, and neither the title nor a beneficial interest is requisite to the existence of such an interest, it is sufficient that the insured is so situated with reference to the property that he would be liable to loss should it be injured or destroyed by the peril against which it is insured. For instance, although a

person has no title, legal or equitable, in the property, and neither possession nor right to possession, yet he has an insurable interest therein if it is primarily charged in either law or equity with a debt or obligation for which he is secondarily liable.

310 S.C. 400, 403–04, 426 S.E.2d 823, 825–26 (Ct.App.1993) (internal citations omitted).

Jones argues Equicredit was Fannie Mae's assignee for purposes of determining Equicredit's insurable interest. We disagree. As found by the master, Equicredit was Fannie Mae's servicing agent and, as such, possessed an insurable interest separate and distinct from Fannie Mae's interest by virtue of its contract with Fannie Mae.

The terms of Equicredit's contract with Fannie Mae support the master's conclusion that Equicredit has an insurable interest distinct from Fannie Mae's interest. The contract states Equicredit is guilty of a breach in the event it fails "to renew or ensure renewal of any required insurance policy on any mortgage (including mortgaged property) serviced under this Contract." The agreement also defines as a breach "failure to take prompt and diligent action under applicable law or regulation to collect past due sums on mortgages, or to take any other diligent action described in our Guides that we reasonably require for mortgages in default." Further, the servicing agreement obligated Equicredit to indemnify and hold Fannie Mae harmless "from any losses [Fannie Mae] may suffer as a result of [Equicredit's] negligence."

The terms of Equicredit's insurance policy with TIG also support the master's conclusion that Equicredit had an individual insurable interest in the property. The policy consists of two parts, the Master Policy and the Standard Fire Policy. By its terms, the Master Policy controls in the event of any conflict between the terms and conditions contained therein and those contained in the Standard Fire Policy "unless the coverages and conditions ... are more restrictive than the Standard Fire Policy in which case the Standard Fire Policy provisions prevail." Equicredit is listed as "Named Insured" on two endorsements to the Master Policy. Jones, as mortgagor, is referred to separately as "Borrower" and as an "additional insured." The declarations page on the Standard Fire

Policy lists Jones as the insured and Equicredit as the mortgagee, but provides: "loss, if any, on building items, shall be payable to [Equicredit]." The Master Policy expressly limits Jones's right to recover to "residual amounts of insurance over and above" Equicredit's "insurable interest." Moreover, under its "Coverage" heading, the Master Policy expressly recognizes Equicredit's insurable interest as a servicing agent rather than as a mortgagee:

> This Agreement applies to direct physical loss or damage by the perils insured against to all real property (buildings) in which the Insured has an interest as mortgagee, *as servicing agent by written agreement,* or as owner through foreclosure .... (emphasis added).

■ There is no South Carolina case expressly considering the insurable interest of a mortgagee's servicing agent. When there is no South Carolina case directly on point, our court may look to other jurisdictions for persuasive authority. *See Williams v. Morris,* 320 S.C. 196, 200, 464 S.E.2d 97, 99 (1995) (applying the law of foreign jurisdictions in the absence of governing South Carolina law). The Michigan Court of Appeals recognized the insurable interest of a mortgagee's servicing agent who contracted to maintain insurance on the mortgaged property:

> The contractual duty to procure insurance gives rise to an insurable interest, as the party bound to obtain insurance will suffer a pecuniary loss on destruction of the property in the absence of insurance.
>
> ... [The servicing agent] was contractually bound to procure insurance on the property in question. If it had failed to do so, it would have been liable ... for the loss under the servicing agreement. Absent insurance, [the servicing agent] would suffer a pecuniary loss on the destruction of the premises.

*Capital Mortgage Corp. v. Michigan Basic Prop. Ins. Ass'n.,* 78 Mich.App. 570, 261 N.W.2d 5, 8 (1977).

■ We agree with the master's analysis as to the unique insurable interest a servicing agent holds as opposed to a mortgagee. Equicredit's insurable interest stems from its potential liability to Fannie Mae pursuant to its obligations under the servicing agreement to protect Fannie Mae from

loss and to maintain proper insurance on the property. More specifically, as noted in the order granting summary judgment, "[f]ailure to obtain the insurance proceeds at issue could trigger contractual liability under the Servicing Agreement." Because Equicredit is exposed to potential liability to Fannie Mae for any losses incurred on Jones's mortgage, Equicredit had an insurable interest in the property. Unlike a mortgagee's insurable interest, which is extinguished when the note underlying the mortgage is satisfied (which is not the case here), Equicredit's insurable interest is based on its potential liability under the servicing agreement, and would not be extinguished even if the mortgage indebtedness is satisfied. *Cf. Singletary v. Aetna Cas. & Sur. Co.*, 316 S.C. 199, 447 S.E.2d 869 (Ct.App.1994).[4]

Were we to agree with Jones's argument that Equicredit was an assignee of Fannie Mae's interest in the insurance proceeds, Equicredit would still be entitled to the proceeds because Fannie Mae did not waive its right to the proceeds, as argued by Jones, with its waiver of a deficiency judgment in the foreclosure action.

 A mortgagor and a mortgagee have independent insurable interests in the property covered by the mortgage. Lee R. Russ & Thomas F. Segalla, 3 *Couch on Insurance 3d* § 42:28, at 42–35 (1997). Ordinarily, the rights of a mortgagee to insurance proceeds are determined at the time of a fire loss. *Singletary*, 316 S.C. at 201, 447 S.E.2d at 870. However, a mortgagee's rights under an insurance policy are terminated if, after a fire loss, the underlying debt is satisfied by a purchaser at a foreclosure sale. *Id.* at 200–01, 447 S.E.2d at 870.

In *Singletary*, a mortgagee assigned its rights to insurance proceeds to the purchaser at a foreclosure sale after the sale satisfied the mortgage indebtedness. *Id.* at 200, 447 S.E.2d at 869. This court held that the assignment of rights transferred no interest in the insurance proceeds to the purchaser. The court reasoned that as assignee of the mortgagee's interest, the purchaser could claim no higher rights than the mortgagee

---

4. We note that Equicredit's counsel indicated to this court at oral argument that the proceeds it received were transmitted to Fannie Mae for application against the mortgage balance.

had at the time of assignment. Because a party cannot claim insurance proceeds in excess of his interest in the insured property, and the mortgage indebtedness was fully satisfied at the time of assignment, the mortgagee had no interest in the insurance proceeds to convey at the time of assignment. *Id.* at 201–02, 447 S.E.2d at 870–71.

In this action, unlike in *Singletary,* the foreclosure sale did not satisfy Jones's mortgage indebtedness to Fannie Mae. Thus, Jones's reliance on *Singletary* is misplaced.

Furthermore, the waiver of deficiency in the foreclosure action would not have prevented Fannie Mae from pursuing the insurance proceeds. A mortgagee who waives deficiency "simply elects to rely solely on the mortgage security for satisfaction of his debt...." *Sellars v. First Colonial Corp.,* 276 S.C. 548, 551, 280 S.E.2d 805, 806 (1981). By waiving deficiency, a mortgagee relinquishes only the right to pursue assets of the mortgagor over and above those covered by the mortgage. *Id.* We find Fannie Mae's waiver of deficiency would not have extinguished its right to the insurance proceeds resulting from damage to the property prior to its sale. *See* 46A C.J.S. *Insurance* § 1403 (1993) (Where insurance is made payable to a mortgagee as his interest may appear, the mortgagee has a superior right to the proceeds of the policy. However, it may hold any residue over the amount of the mortgage debt for the mortgagor.); 46 C.J.S. *Insurance* § 1113 (1993) (A mortgagee is entitled to the full amount of the insurance proceeds, where insurance is payable as his interest may appear, if the unpaid amount of the mortgage is in excess of the insurance proceeds.).

## II. *Conversion*

Jones further asserts the master erred in granting Equicredit summary judgment on his conversion claim because at the time of the fire loss, he was the lawful and rightful owner of the fire insurance policy. We find no error.

"Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another.... To establish the tort of conversion, it is essential that the plaintiff establish either title to or right to the possession of the personal property." *Crane*

*v. Citicorp Nat'l Servs., Inc.,* 313 S.C. 70,73, 437 S.E.2d 50, 52 (1993) (citations omitted).

The policy expressly limited Jones's right to recover to "residual amounts of insurance over and above" the Insured's "insurable interest." Most importantly, the insurance contract provides: "Loss, if any, shall be adjusted with and made payable to the Insured and/or the Borrower[ ] as their interests may appear." At the time of the loss, Jones was indebted to Fannie Mae for more than twice the amount of the insurance proceeds. As the agent for Fannie Mae, Equicredit's interest in the insurance proceeds was unquestionably superior to Jones's interest at the time the house was damaged. Accordingly, Equicredit was the rightful recipient of the insurance proceeds. As Jones cannot establish entitlement to the insurance proceeds, his action for conversion fails.

For the foregoing reasons, the grant of summary judgment is

**AFFIRMED.**

HEARN, C.J., CURETON and HOWARD, JJ., concur.