## SWEARINGEN v. HARTFORD INS. CO.

1. EQUITABLE LIEN—NUDUM PACTUM—INSURANCE.—An agreement to insure a house on a mortgaged lot for benefit of mortgagee, made after execution of mortgage, and forming no part of the consideration of the mortgage debt, is without consideration, void, and gives mortgagee no equitable lien on insurance money.

2. EVIDENCE—INSURANCE.—In a contest as to when an agreement to insure a house for benefit of mortgagee was made, testimony tending to show that mortgagor was prompted to take out insurance by another than the mortgagor, and at another time, is competent.

3. HEARSAY.—Statement by a bystander, not a party, as to what a lawyer said to mortgagor while drawing the mortgage, is hearsay.

4. IBID.—HARMLESS ERROR.—Testimony should be stricken out when found to be hearsay, but the failure to do so under the facts in this case is harmless error.

5. WITNESS—PRACTICE—APPEAL.—When a question is attempted to be propounded to a witness, and objection, irrelevant to scope of question, is made before question is complete, and witness leaves the stand, question is not completed and Court does not rule, there is no reversible error.

6. ASSIGNMENT—INSURANCE—EQUITABLE LIEN.—In an action to enforce an equitable lien on the proceeds of an insurance policy, it is not necessary to show that the policy has been transferred or assigned.

7. WAIVER—INSURANCE—ESTOPPEL.—An insurance company, by paying the loss, waives its right to insist, in a contest over insurance money, that the policy was void by reason of the failure of the insured to notify the company of a mortgage on the premises.

8. EXCEPTION too general.

Before ALDRICH, J., Edgefield, March, 1897.    Reversed.

Action by Laura M. Swearingen v. The Hartford Fire Insurance Company. Judgment for plaintiff. Defendant appeals on following exceptions:

1st. Because his Honor, Judge Aldrich, erred in overruling the demurrer to the amended complaint.

2d. Because his Honor erred in not allowing G. B. Lake, a witness for plaintiff, to testify on cross-examination to what J. P. Hardy said to him in regard to obtaining the insurance policy at the time he came for that purpose; and also in not allowing G. B. Lake, on cross-examination, to state what he said to Hardy on that occasion.

3d. Because his Honor erred in not allowing J. P. Hardy, a witness for plaintiff, to testify as to why he insured the dwelling house of his wife; and in not allowing him to state what he said to G. B. Lake when, and at the time, he did insure said house.

4th. Because his Honor erred in allowing J. E. Swearingen, a witness for the plaintiff, in the direct examination, to testify to what Capt. Waters, the attorney who drew the

Swearingen mortgage, said in the presence of J. P. Hardy in regard to not having a mortgage with insurance clause in it.

5th. Because his Honor erred in not having the testimony of the plaintiff, on motion of defendant's attorney, stricken out or from the record, wherein she says that "my agent told me that Capt. Waters went to them (Mr. and Mrs. Hardy), and they refused to transfer the policy."

6th. Because his Honor erred in not allowing defendant's attorney to state a question which he desired to propound to W. H. Folk, a witness for defendant, and at first attorney for plaintiff. The intended question being: "What did you say to W. N. Burnett, defendant's agent, when you went with J. E. Swearingen, as attorney, to see him in regard to this insurance?" Whereupon his Honor interrupted defendant's attorney and made statement in regard to the testimony of attorney and client, and the witness himself claimed the protection and was allowed to come from the stand.

7th. Because his Honor erred in refusing to charge the 8th request of defendant: "If the jury believe that J. P. Hardy, 'as agent as aforesaid,' and his wife, Mrs. Laura S. Hardy, refused to transfer and turn over said policy after the fire to the plaintiff herein, then she had no interest in the same, and the defendant, if liable at all, was bound to pay the money to the said Mrs. Laura S. Hardy, to whom the policy was issued and made payable, or to her assigns, if she assigned it."

8th. Because his Honor erred in refusing to charge the last part of defendant's 9th request, "and the plaintiff must also prove that the policy was transferred, before she can recover."

9th. Because his Honor erred in refusing to charge defendant's 10th request, "That if the jury believe from the evidence that Mrs. Laura S. Hardy failed to give notice to the company of the existence of a mortgage upon said premises, at the time said policy was issued to her, then the policy became null and void, and she could not have recovered in a suit against the defendant upon same if defendant

had resisted payment, and, therefore, the plaintiff could not recover.

10th. Because his Honor erred in refusing to grant a new trial.

11th. That his Honor erred in charging the plaintiff's first request.

*Mr. J. W. DeVore,* for appellant, cites: *Insured could not be required to assign policy:* 20 S. C., 136. *Lien is waived if parties enter into a special agreement inconsistent therewith:* 52 N. H., 354.

*Messrs. King & Spalding,* also for appellant, cite: *A promise to secure a debt after contraction is nudum pactum:* 1 Ga., 294; 9 Ia., 434. *No lien on insurance money unless contract to insure for mortgagee's benefit is made at time of mortgage:* 124 Mass., 61. *Contract cannot be enforced:* Rev. Stat, 2134. *A lawful assignment will prevail over mortgagee's equitable lien, in absence of notice:* 89 N. Y., 592. *A mere agreement to pay a debt out of a particular fund gives no lien on it:* 127 Mass., 34; 1 DeGex, M. & G., 763. *Local agent had no authority to waive condition as to foreclosure:* 29 S. C., 560; 66 Fed. R., 490. *Foreclosure avoids policy:* 62 Ia., 387; 133 N. Y., 356.

*Messrs. Croft & Tillman,* contra, cite: *Parol agreement to insure for benefit of mortgagor gives him equitable lien on fund:* 25 L. R. A., 305; 44 N. Y., 42; 2 Am. St. Rep., 222; 5 R. I., 491; 29 N. J. Eq., 90; 3 Bliss, 175; 29 Minn., 330; 31 Mich., 408; 101 U. S., 439. *Payment of part of loss estopped company from denying liability:* 14 Barb., 206.

April 16, 1898. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.      The plaintiff brought this action to recover the sum of $1,000 mentioned in a policy of insurance issued by the defendant company to Mrs. Laura S. Hardy on her dwelling house, upon the ground, as alleged, that the plaintiff has an equitable lien upon the

amount mentioned in the policy, growing out of certain facts which will be hereafter stated. No question was raised as to whether the plaintiff had adopted the proper form of proceeding, or whether all the proper parties were before the Court, and we are not to be regarded as deciding anything as to either of those matters.

It appears that on the 18th of November, 1893, the plaintiff sold a tract of land to Mrs. Hardy, who paid a part of the purchase money in cash and gave her notes for the balance thereof. These notes were secured by a mortgage on the land, which it appears was not executed until the 14th of April, 1894. After Mrs. Hardy went into possession, but exactly when does not appear, she erected a dwelling house on the land, and took out the policy of insurance on the same, on the 6th of July, 1896. This house was destroyed by fire on the 13th of September, 1896. In the meantime, however, the plaintiff herein commenced an action against Mrs. Hardy to foreclose said mortgage, and on the 5th of August, 1896, obtained judgment of foreclosure, under which the mortgaged premises were sold for a sum insufficient to pay the mortgage debt, and execution for deficiency, amounting to upwards of $1,200, was issued against the mortgagor, Mrs. Hardy, which has been returned *nulla bona.* Thereupon the plaintiff commenced this action against the defendant company, and in her complaint she alleges, amongst other things: "That just before said judgment of foreclosure was obtained, the plaintiff notified one J. P. Hardy, who was the husband and agent of said Mrs. Laura S. Hardy, that the plaintiff would require a policy of insurance of $1,000 to be taken out on the dwelling house, situate on said mortgaged premises, which said policy of insurance must be for the benefit of the plaintiff, to protect her mortgage and judgment thereon. The said J. P. Hardy, as agent of Mrs. Laura S. Hardy, his wife, thereupon agreed to take out said insurance policy for such amount and for the benefit of the plaintiff as required by her; and the plaintiff further alleges that the said J. P. Hardy, accordingly, on

or about the 6th day of July, 1896, did take out a policy of insurance in the defendant company for the sum of $1,000, under the name of Laura S. Hardy, by which the defendant company agreed to insure the dwelling house on said mortgaged premises against loss or damage by fire to the amount of $1,000, for a period of one year from the said 6th day of July, 1896." The plaintiff, in her complaint, after stating that the said dwelling house was destroyed by fire on the 13th of September, 1896, alleges: "That immediately thereafter the plaintiff called upon the said J. P. Hardy, agent as aforesaid, to turn over and transfer to the plaintiff said policy of insurance; but the said J. P. Hardy, contrary to his agreement that the said policy of insurance should be for the benefit of the plaintiff, refused to turn over or transfer the same to her; whereupon the plaintiff, maintaining that she had an equitable lien upon said policy of insurance, and upon the money which the defendant would be bound to pay thereunder, gave notice to the defendant, through its agent, W. N. Burnett, in the town of Edgefield, in this State, of her said rights and claim, and notified the defendant not to pay out said money under said policy to said Mrs. Laura S. Hardy; but the defendant, in disregard of said notice, and of the rights of the plaintiff, on or about the 15th day of October, 1896, wrongfully paid over to Mrs. Laura S. Hardy the sum of $1,000 under said policy of insurance on account of the loss occasioned by fire in the destruction of the dwelling house on said premises; and the plaintiff alleges that, by reason of the facts and circumstances aforesaid, she had an equitable lien upon the money due by the defendant on said policy of insurance, and because of their paying over said sum of money to Mrs. Laura S. Hardy, with notice of the plaintiff's equity and rights, they have made themselves liable to the plaintiff for said amount of insurance," &c.

The defendant, in its answer, after denying the allegations in the complaint material to the issues presented in this case, avers that the policy of insurance in question was issued to

Mrs. Hardy without any knowledge or notice whatever that said policy was taken out for the benefit of the plaintiff as mortgagee until after the loss had occurred and after the amount due on said policy had been adjusted and paid; and alleges that on the 24th of September, 1896, the said Mrs. Hardy transferred her interest in said policy or insurance to M. H. Kempson and the Bank of Edgefield; and that on the 15th of October, 1896, the defendant paid the full amount due on said policy to Mrs. Laura S. Hardy, M. H. Kempson, and the Bank of Edgefield, as appears by their receipt (a copy of which is set out in the "Case"), "all of which was paid and done without any knowledge on the part of the defendant, that plaintiff or anybody else had or claimed to have any interest in said insurance." The defendant also avers in its answer that it had no knowledge or notice, when the policy of insurance was issued, that there was any mortgage on said house, or that any proceedings for foreclosure of said mortgage were pending; and this, it claimed, rendered the policy void under the express provisions contained therein.

Under these pleadings, the case came on for trial before his Honor, Judge Aldrich, and a jury, and after the testimony set out in the "Case" was heard, his Honor charged the jury as is there set forth, who found a verdict in favor of the plaintiff, and judgment having been entered thereon, the defendant appeals, upon the several grounds set out in the record.

Before proceeding to consider these grounds, we propose to lay down the principles of law which we conceive to be applicable to a case of this kind. While a policy of insurance is purely a personal contract between the insurer and the assured, and hence a mortgagee of the premises insured, merely as such, has no interest, either in law or equity, in a policy of insurance taken out by the mortgagor in his own name and for his own benefit, yet if the mortgagor is bound, either by covenant in the mortgage or otherwise—for example, by a valid verbal

agreement—to keep the property insured as a further secu-
rity for the payment of the mortgage debt, then the mort-
gagee is entitled to an equitable lien upon the money due
on the policy of insurance, even though taken out in the
name of the mortgagor. 1 Jones on Mortg., sec. 401; 15
Am. & Eng. Encyc. of Law, 807; *Cromwell* v. *Brooklyn
Ins. Co.*, 44 N. Y., 43 (reported also in 4 Am. Rep., 641);
*Stearns* v. *Quincy &c. Ins. Co.*, 124 Mass., 57 (reported
also in 26 Am. Rep., 647); *Nordyke* v. *Gery*, 112 Ind., 535
(reported also in 2 Am. St. Rep., 219). This rule is recog-
nized in *Wheeler* v. *Ins. Co.*, 101 U. S., where, at page 442,
Mr. Justice Bradley thus tersely states it: "If the mortgagor
is bound, by covenant or otherwise, to insure the mortgaged
premises for the better security of the mortgagee, the latter
will have an equitable lien upon the money due on a policy
taken out by the mortgagor, to the extent of the mortgagee's
interest in the property destroyed." So also in the case of
*Chipman* v. *Carroll*, 25 L. R. A., 305, a case much relied
on by counsel for respondent, the same rule is recognized;
for Horton, C. J., in delivering the opinion of the Court,
uses this language: "If there was no covenant in the mort-
gage, or agreement between the parties, that the premises
would be insured for the benefit of the mortgagee, the mere
fact that Chipman's mortgage covers the property insured,
and the insurer (a misprint for insured) is personally liable
for the debt, gives Chipman, the mortgagee, no correspond-
ing claim upon the policy or the proceeds of it." But he
goes on to say, where the mortgage does contain such a
covenant, then the result would be otherwise. "Again," he
says, "if there was no insurance clause in the mortgage,
yet, *if to obtain the loan secured by the mortgage* (italics
ours) it was verbally agreed between the parties that insur-
ance was to be kept up on the mortgaged property by the
mortgagors for the benefit of the mortgagee, as additional
security, and subsequently the mortgagors, acting upon this
agreement, obtained insurance, with loss payable to the
mortgagee, and, after this expired, took out another policy,

not payable to the mortgagee, the latter would be entitled to an equitable lien on the proceeds of the policy, if any loss by fire occurred." Inasmuch as it is conceded that the mortgage in the present case contains no covenant that the mortgagor should insure the dwelling house for the benefit of the mortgagee, it was necessary for the plaintiff, in order to make out her case, to show that there was a verbal contract, verbal or otherwise, binding the mortgagor to insure the property as a further security for the payment of the mortgage debt. The plaintiff, recognizing this necessity, has alleged in her complaint that just before the judgment for foreclosure was obtained, she notified Hardy, the agent of the mortgagor, that he must take out insurance on the dwelling house to protect her mortgage debt, and that he agreed to do so; and she offered testimony tending to prove such agreement. Although the testimony upon this point was directly conflicting, we must assume, after verdict in a case like this, where we have no jurisdiction to review questions of fact, that the jury found that there was such agreement; but no consideration for such an agreement was either alleged or proved. It was made long after the contract for the purchase of the property was made and consummated, and long after the mortgage was executed. It could not, therefore, have entered either into the contract of purchase or into the contract evidenced by the notes and mortgage. We can very easily understand how such an agreement, if made at the time of the contract for the sale and purchase of the property, might constitute an important inducement for the making of such contract, and thus be based upon a sufficient consideration; but when it is made "*just before*" judgment of foreclosure was obtained, it is difficult to conceive of any consideration for such an agreement, except forbearance, which is conclusively negatived by the allegations in the complaint and the testimony, which show that there was no forbearance, as the case proceeded as rapidly as possible, and judgment was obtained on the 5th of August, 1896, just about one month after the

policy was taken out, and under that judgment the mortgaged premises were sold in November following. It is true, that there was some testimony tending to show that something was said about insurance at the time when the mortgage was drawn, but there is no positive testimony that there was any agreement to that effect at that time. Indeed, the undisputed fact seems to be that the dwelling house which was burned had not been built at that time. Besides, even if there was an agreement to insure at that time, it would be open to the same objection—lack of consideration—as the agreement previously spoken of; for the mortgage bears date in April, 1894, several months after the contract for the purchase had been made in November, 1893, and hence such agreement could not have been a part of the contract previously made, and thus derive any support from the consideration of such contract. This being our view of the nature of the case, as developed by the pleadings and evidence, and of the principles of law applicable thereto, we will next proceed to the consideration of the several exceptions.

The first exception having been abandoned on the argument here, requires no further notice.

The second exception imputes error to the Circuit Judge in not allowing the witness, G. B. Lake, to testify as to what passed between him and J. P. Hardy in regard to taking out the insurance on the property in question. It seems that J. P. Hardy, as the agent of his wife, was desirous of procuring a loan from some building and loan association of which Lake was the agent, and when he approached Lake for that purpose, the conversation in regard to the insurance took place, and the object of the rejected testimony was to show that Hardy, then, for the first time, conceived the idea of insuring the property, as it would be necessary to do so in order to obtain the desired loan from the building and loan association. The Circuit Judge seems to have ruled out this testimony because it had nothing to do with the case. This, it seems, was an incorrect view of

the proposed testimony, for it would tend to show that Hardy, when he took out the insurance, was not doing so in pursuance of the agreement which plaintiff alleged that he had made, but was prompted to do so solely by what passed between him and Lake.    This exception must, therefore, be sustained.

The third exception is disposed of by what has just been said, and must, likewise, be sustained.    .

The fourth exception imputes error to the Circuit Judge in allowing the witness, J. E. Swearingen, the son and agent of the plaintiff, to testify as to what Capt. Waters, the lawyer who drew the mortgage, said to Hardy about not having a form of a mortgage containing an insurance clause.    This testimony was clearly hearsay, and, therefore, incompetent.    Capt. Waters was a competent witness, and should have been called to prove what he said to Hardy; if he said anything about the insurance.    Counsel for respondent contends that this hearsay testimony of J. E. Swearingen was competent, because he said that Mrs. Hardy was present and heard the conversation between Waters and her husband.    But we do not see how, that affects the question.    Mrs. Hardy is not a party to this case and, so far as we can perceive, has no interest in or connection with it except as a witness.    How this hearsay testimony of the plaintiff's son can be rendered competent in this action against this defendant, who it is not pretended was present, either by agent or otherwise, simply because Mrs. Hardy was present, we are unable to comprehend.    The fourth exception is sustained.

The fifth exception is based upon the ground that his Honor erred in not striking out, on defendant's motion, that portion of the testimony of the plaintiff in which she says that her agent told her that Capt. Waters went to Mrs. Hardy and her husband to get them to transfer the policy, and they refused to do so.    It seems that plaintiff, after testifying that both Hardy and wife, very shortly after the fire, told her that as soon as they got the

insurance money, they would pay it to her on the mortgage debt, was asked the question: "When did you first learn that Mr. and Mrs. Hardy had changed their minds about your getting that money?" To which the witness replied: "Capt. Waters went to them to transfer the policy to me, and they refused to do it, but said they were going to pay the bulk of the money on the property." On her cross-examination, this witness was asked how she knew that Capt. Waters went to Mr. and Mrs. Hardy, and they refused to transfer the policy? to which she replied: "My agent told me so— my son, J. E. Swearingen, my agent, told me so." Whereupon counsel for respondent moved to strike out that portion of plaintiff's testimony. To this the Court, addressing the witness, said: "You must testify only what you know of your personal knowledge. Your agent has been on the stand. When you don't know of your personal knowledge, say no; you can't answer only as derived from your knowledge." But the Court neither granted nor refused the motion to strike out the testimony—made no ruling at all. While we think that the motion to strike out the testimony, so soon as it appeared to have been hearsay, should have been granted, and the Circuit Judge erred in not doing so, yet, under the view we take of the case, it was harmless error. The action was not brought on the policy, and, therefore, it was immaterial whether the policy had been assigned or transferred to the plaintiff. Upon this ground alone the exception is overruled.

The sixth exception imputes error to the Circuit Judge in refusing to allow counsel for defendant to propound a certain question to Mr. Folk, while on the stand as a witness. For a proper understanding of the point presented by this exception it will be necessary to make a statement taken from the "Case." Mr. Folk, being put upon the stand as a witness for the defense, was asked by defendant's counsel this question: "Were you employed by Mr. Swearingen to represent him in this case?" To which the reply was: "I was employed by Mr. Swear-

ingen to look after this insurance money." "Mr. Croft (for plaintiff): I raise objection, if he is going to talk about communications with his client." "Mr. Folk: I prefer not to disclose communications between me and my client." "Mr. DeVore (for defendant): I want to ask him this question"— "The Court: Both for the benefit of attorney and client, communications passing are regarded confidential, and the rule goes further, on the ground of public policy, an attorney ought not to be allowed to divulge it." Mr. Folk then seems to have left the stand—at least, this is all that appears in the "Case." It does not there appear what was the question which Mr. DeVore proposed to propound to Mr. Folk, as he was interrupted by the Court making the remaks above quoted, before the question was stated. The question intended to be propounded, as stated in the exception: "What did you say to W. N. Burnett's agent, when you went with J. E. Swearingen, as attorney, to see him in regard to this insurance?" was certainly not objectionable upon the ground that it involved the disclosure of any confidential communications between attorney and client; but the trouble with the appellant is, that the nature of the question was not made known to the Circuit Judge, and he, very naturally, assumed from what had been previously said, that the purpose was to bring out something that had passed between attorney and client. The proper course was for defendant's counsel, after cautioning his witness not to answer until authorized by the Court to do so, to have stated his question and asked the Court to rule as to its admissibility. It is true, that counsel for appellant was probably deterred from pursuing this course by the remarks of the Circuit Judge, cutting off his question; but still, as the "Case" does not show that there was any ruling of the Court upon any particular question—the only ruling made being upon the general proposition as to confidential communications between attorney and client, which was not erroneous—we do not see how the exception can be sustained.

The seventh and eighth exceptions may be considered

21—52

together, as they both rest upon the idea that the plaintiff cannot recover without showing that the policy of insurance had been assigned or transferred to her.

This proposition cannot be sustained, for, as we have said, the action is not upon the policy, but it is brought to enforce an alleged equitable lien upon the money. due on the policy, and in such an action it is not necessary to show that the policy has been assigned or transferred to plaintiff.

The ninth exception imputes error in refusing to charge the jury, that if Mrs. Hardy failed to give notice of the mortgage when she took out the policy, that the same was thereby rendered void.    This might have been true but for the fact that the defendant company has waived the condition in the policy relied on to sustain this exception, by paying the money due thereon after it had acquired knowledge of the mortgage.    This exception must, therefore, be overruled.

The tenth exception, which is in these words: "Because his Honor erred in refusing to grant a new trial," is too general, as has been often held, to require further notice.

The eleventh exception imputes error to the Circuit Judge in charging plaintiff's first request.    That request is quite long, and need not be inserted here, as the vice in it consists in the fact that the Circuit Judge ignored the necessity of showing that there was a valid agreement, based upon a sufficient consideration, on the part of Mrs. Hardy, to insure the dwelling house, which was burned, for the benefit of the plaintiff, her mortgagee.    All instructions to the jury should be applicable to the facts as developed by the pleadings and the evidence; and inasmuch as we have seen above that the only agreement to insure for the benefit of the plaintiff set forth in the pleadings, is alleged in the complaint to have been made just before the judgment of foreclosure was obtained, and no consideration for such agreement is either alleged or proved; and inasmuch as the only other agreement to that effect, which

appears in the testimony, received without objection, appears to have been made; as represented by the testimony in behalf of plaintiff herself, some months after the original contract was made, and there is no allegation and no testimony that there was any consideration whatever for such last mentioned agreement, it seems to us that there was error in charging this request in the form in which it was presented, without some modification tending to draw the minds of the jury to the inquiry whether either of the said agreements were based upon any consideration. The eleventh exception is, therefore, sustained.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and the case be remanded to that Court for a new trial.