602 S.E.2d 389

**Stewart BELTON, Respondent–Petitioner**

v.

**CINCINNATI INSURANCE COMPANY, Petitioner–Respondent.**

No. 25862.

Supreme Court of South Carolina.

Heard April 6, 2004.
Decided Aug. 30, 2004.

Frank A. Barton, of Reeve and Barton, L.L.C., of West Columbia, and H. Wayne Floyd, of Wayne Floyd Law Office, of West Columbia, for Respondent–Petitioner.

Robert D. Moseley and Mark M. Trapp, both of Leatherwood, Walker, Todd & Mann, P.C., of Greenville, and S. Jahue Moore, of Moore, Taylor & Thomas, P.A., of West Columbia, for Petitioner–Respondent.

Chief Justice TOAL:

This cross-appeal arises from a breach of contract and bad faith refusal to pay claim brought by Stewart Belton (Belton) against Cincinnati Insurance Company (Cincinnati). The trial court granted Cincinnati summary judgment, holding Belton did not have an insurable interest in the destroyed property. The court of appeals reversed. *Belton v. Cincinnati Ins. Co.,* 353 S.C. 363, 577 S.E.2d 487 (Ct.App.2003). We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

In October 1997, Belton and Charleston attorney Grady Query (Query) entered into a contract entitled "Lease Option to Buy," transferring possession of a commercial building and eleven and a half acres of land to Belton. The contract included (1) a lease provision directing Belton to pay Query monthly payments of $1,200; (2) a purchase provision allocating 80 percent of Belton's monthly payments toward Belton's purchase of the property; (3) a provision establishing that the closing date would occur on or before November 1, 2002; and (4) a provision creating a five percent penalty for late monthly payments. The contract did not provide, however, a provision that Belton would forfeit the equity in the property upon nonpayment of the monthly payments.

Shortly after the contract was signed, Belton fell behind on his payments. In early 1998, Query wrote Belton two letters terminating the agreement and demanding that Belton vacate the premises. When Belton refused to vacate the premises, Query filed a rule to vacate or show cause. In April 1998, Belton declared bankruptcy and received protection from an automatic stay, allowing him to remain in possession of the property.

In August 1998, Belton applied to insure the building with Cincinnati.[1] Two days later, Belton applied for insurance with General Star Insurance Company. Belton testified that he applied for insurance with General Star because he was unsure whether Cincinnati would insure the building. Approximately a week after applying for insurance with both Cincinnati and General Star, the building was destroyed by fire. Therefore, at the time that the building was destroyed, both policies were in effect, and Belton sought coverage under both policies.

When Belton filed a claim with Cincinnati, Cincinnati denied coverage, alleging Belton lacked an insurable interest.[2] During Cincinnati's investigation of Belton's claim, Cincinnati hired the Warren Group to conduct a fire analysis, which concluded that the fire was set intentionally. Belton testified that he was on vacation with his family when the fire occurred. Belton brought suit.[3]

During a deposition, counsel for Cincinnati asked Belton if he had ever taken a polygraph test concerning the destroyed building. Belton answered that he had taken the test, but he claimed that the results of the test were protected by the attorney-client privilege and refused to provide the results. Cincinnati filed a motion to compel, and, in turn, Belton filed a motion to invoke the attorney-client privilege. Although, the trial judge granted Cincinnati's motion to compel, Belton never testified about the polygraph results because the trial court granted summary judgment before Belton could be questioned again.

Belton also refused to respond to Cincinnati's request to admit, arguing that the documents referenced in the request were not properly served in accordance with Rule 56(a), SCRCP. Cincinnati filed a motion to compel, which the trial

---

1. Cincinnati eventually accepted Belton's application and insured the building for $250,000.

2. Cincinnati also alleged in its answer-counterclaim that Belton was involved in the intentional burning of the building, precluding him from coverage. Belton was in fact indicted for insurance fraud but was never convicted.

3. Belton initiated a suit against both Cincinnati and General Star but eventually dismissed the action against General Star without prejudice.

court granted, finding that the request properly incorporated documents by reference already in Belton's possession. Nevertheless, before the trial court ruled on the motion, the issue was held moot because Belton complied with the request before the motion could be granted.

At trial, the judge granted Cincinnati's motion for summary judgment. Belton timely appealed and the court of appeals reversed, holding that "a party holding an option to purchase has an insurable interest" and remanding questions of fact concerning (1) whether Belton's option survived Query's attempts to terminate the agreement, and (2) the amount or extent of Belton's insurable interest in the underlying property.

Petitioner–Respondent Cincinnati presents the following issue for review:

I.  **Did the court of appeals err in reversing the trial court, finding that Belton had an insurable interest in the property insured?**

Respondent–Petitioner Belton brings the following issues for review:

II.  **Did the trial judge err in ruling that the results of Belton's polygraph test were not protected under the attorney-client privilege?**

III.  **Did the trial judge err in granting Cincinnati's motion to compel?**

### Law/Analysis

### Standard of Review

■ The trial court must grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *Conner v. City of Forest Acres,* 348 S.C. 454, 462, 560 S.E.2d 606, 610 (2002). When determining whether triable issues of fact exist, all evidence and inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Osborne v. Adams,* 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001).

## Insurable Interest

■ Cincinnati argues that the court of appeals erred in finding that a question of fact existed as to whether Belton had an insurable interest in the destroyed property. We agree. Although we do not discount the possibility that an option to purchase land may create an insurable interest, we find that Belton had no insurable interest in the destroyed property because he did not have equity in the property.

## Equity and Insurable Interest

The central issue of this case is whether Belton had an insurable interest in the underlying property at the time he contracted for insurance with Cincinnati. Belton argues his option to purchase the property gave him an insurable interest. To accept this argument, we must find that Belton's option survived Query's termination of the agreement.[4] Nevertheless, regardless of whether Belton's option was enforceable, we hold that Belton did not have an insurable interest in the underlying property because he did not have any equity in the underlying property when he contracted for insurance with Cincinnati. Further, we reserve the question of whether an option to purchase real property creates an insurable interest for a later date.

■ Our holding that a party cannot have an insurable interest in an option to purchase land if that party does not have equity in that land is consistent with our jurisprudence concerning insurable interest. Although, our courts have not used the word "equity," we have certainly equated a party's insurable interest in property with a party's personal stakes in that property. In *Benton & Rhodes, Inc., v. Boden,* the court of appeals held that "[t]o have an insurable interest in property, one must derive a benefit from its existence or suffer a loss from its destruction." 310 S.C. 400, 403, 426 S.E.2d 823, 825 (Ct.App.1993). The next year, the court of appeals held that an insured may not recover insurance proceeds in excess of his interest in the property. *Singletary v. Aetna Cas. & Sur. Co.,* 316 S.C. 199, 202, 447 S.E.2d 869, 870 (Ct.App.1994). Therefore, our holding that an option cannot create an insurable

---

4. The parties do not dispute that the agreement was terminated upon Belton's default and Query's attempts to have him evicted.

interest where its holder has no equity in the underlying property is consistent with our prior rulings.

After reviewing the record, it is clear that Belton's equity in the underlying property is *de minimis* at best. It is unclear how many monthly payments, if any, Belton made to Query. But when Query sought relief from the bankruptcy court, he filed a statement indicating that Belton's total arrearage was $7,810. According to the terms of the contract, Belton was to pay a $50 down payment and then $1,200 a month, with 80% of the monthly payment going toward the purchase of the building. Therefore, 80% of the Belton's monthly payments made to Query arguably constitute equity. Nonetheless, Belton has failed to provide any evidence that the equity he accumulated in the property was not diminished and ultimately depleted because of his arrearages.

In addition, as plaintiff, Belton had the burden to set forth specific facts, which included providing evidence that he had equity in the property at the time he contracted for insurance and at the time of loss. The non-moving party may not rest on the mere allegations of his pleading to withstand summary judgment but "must set forth specific facts showing that there is a genuine issue for trial." SCRCP 56(e); *Bravis v. Dunbar*, 316 S.C. 263, 449 S.E.2d 495 (Ct.App.1994). Because Belton has failed to provide such evidence, we hold that summary judgment was proper. We may not draw an inference that Belton had an insurable interest without sufficient evidence to support such a conclusion.

## CONCLUSION

We hold that because Belton has failed to show that he had any equity in the destroyed property, he did not have an insurable interest in the property. If Belton had provided evidence that the equity he acquired through monthly payments was in excess of his arrearages, plus interest accrued upon nonpayment, he may have established that he held an insurable interest. Nevertheless, we need not make that determination at this time. Further, because Belton did not have an insurable interest in the underlying property, we need not address Belton's issues concerning the polygraph evidence and the request to admit. Therefore, we reverse the court of

appeals' ruling, and uphold the trial court's order granting summary judgment for Cincinnati and denying Belton coverage under his policy with Cincinnati.

**REVERSED.**

WALLER, BURNETT, PLEICONES, JJ., and Acting Justice JOHN W. KITTREDGE, concur.