**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Farm Bureau Ins. Co., Plaintiff,

v.

Marion L. Driggers, Shiralee Driggers, Tammy D. Floyd, Arthur McKenzie, a/k/a Arther McKenzie, The Travelers Home and Marine Insurance Company, The United States of America acting by and through its agency, The Internal Revenue Service and The South Carolina Tax Commission, Defendants,

of whom Marion L. Driggers is the Appellant and The Travelers Home and Marine Insurance Company is the Respondent.

Appellate Case No. 2021-000835

———————

Appeal From Williamsburg County
Kristi F. Curtis, Circuit Court Judge

———————

Unpublished Opinion No. 2024-UP-236
Heard March 5, 2024 – Filed July 3, 2024

———————

**AFFIRMED**

———————

Reese R. Boyd, III, of Davis & Boyd LLC, of Myrtle Beach, for Appellant.

Susan Drake DuBose, of Baker, Ravenel, & Bender, LLP, of Columbia, for Respondent.

---

**PER CURIAM:** The underlying facts of this case are set out in a companion unpublished opinion, *South Carolina Farm Bureau Ins. Co. v. The Travelers Home and Marine Ins. Co.*, Op. No. 2024-UP-235 (S.C. Ct. App. filed July 3, 2024). For brevity, this case involves a fire at a home in Lake City, South Carolina upon which Marion Driggers and Arthur McKenzie held two separate insurance policies. McKenzie insured his interest in the property under a policy with The Travelers Home and Marine Insurance Company (Travelers). Driggers is the named insured on a South Carolina Farm Bureau Insurance Company (Farm Bureau) policy. Parts of the record suggest that Farm Bureau's policy insured Driggers's $80,000 mortgage interest, even though the policy is written as a homeowner's policy. After Farm Bureau brought this case seeking a declaratory judgment, Driggers cross-claimed against Travelers for bad faith, breach of contract, and civil conspiracy. Travelers filed motions for interpleader and summary judgment, which the circuit court granted. Driggers then filed this appeal. For the following reasons, we affirm the circuit court's judgment granting Travelers's request for interpleader and dismissing it from this action with prejudice.

"[A] moving party is entitled to summary judgment 'if the [evidence before the court] show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 459, 892 S.E.2d 297, 299 (2023) (alterations in original) (quoting Rule 56(c), SCRCP). "When determining whether triable issues of fact exist, all evidence and inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party." *Belton v. Cincinnati Ins. Co.*, 360 S.C. 575, 578, 602 S.E.2d 389, 391 (2004).

**Driggers's Standing to Challenge Travelers's Payments to McKenzie**

The record reflects that either Driggers's wife, individually, or Driggers and his wife, together, financed McKenzie's lease-to-own purchase through a private mortgage. South Carolina courts have held "that a mortgagor and mortgagee have separate and distinct interests in the same property which they may insure[,]" and "[an] owner's interest in insured property and the mortgagee's interest therein are separate and distinct for insurance purposes." *Johnson v. Fid. & Guar. Ins. Co.*, 245 S.C. 205, 209, 140 S.E.2d 153, 155 (1965). South Carolina law supports the view that the mortgage holder would have an interest in the proceeds of the Travelers policy.

*See Laurens Fed. Sav. & Loan Ass'n v. Home Ins. Co. of New York*, 242 S.C. 226, 232, 130 S.E.2d 558, 560 (1963) ("[A] mortgagee has an insurable interest to the extent of the balance due it by the mortgagor."). The court affords leniency towards pro se litigants regarding procedural defects as long as the leniency is within the bounds of the law, but we cannot rescue and litigate an argument that Driggers has standing to make a claim to the Travelers policy proceeds when he made no such argument to the circuit court. Given the arguments offered at the time the circuit court was considering the motion, the court did not err in ruling that Driggers was a stranger to the Travelers policy and was therefore barred from bringing claims for breach of contract and bad faith. Even though this reasoning alone resolves the case, we address other arguments for the sake of completeness.

**Bad Faith**

Driggers cross-claimed against Travelers for bad faith, breach of contract, and civil conspiracy. This was after Driggers filed a claim under his Farm Bureau policy, and after Farm Bureau brought its action for declaratory judgment. To maintain a claim for bad faith, South Carolina requires a claimant to adequately allege:

> (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured.

*Howard v. State Farm Mut. Auto. Ins. Co.*, 316 S.C. 445, 451, 450 S.E.2d 582, 586 (1994). The circuit court properly found that Driggers lacked standing under the Travelers policy. Driggers could not satisfy the first element required to maintain a bad faith claim because he did not demonstrate that there was a mutually binding contract of insurance between him and Travelers.

**Breach of Contract**

The circuit court found that Driggers did not allege a contractual relationship with Travelers. Driggers contended that his relationship was derived from McKenzie's contractual relationship with Travelers and that the delay in adjusting McKenzie's claim damaged him. We, like the circuit court, do not see how this is a viable argument. Travelers was required to investigate and adjust the claim of its named insured. If Driggers was a mortgage holder, he may have had some unintended rights

under the Travelers policy, and Travelers receiving notice of the mortgage would have triggered a duty to investigate. *See Gibbes Mach. Co. v. Niagara Fire Ins. Co.*, 119 S.C. 1, 3, 111 S.E. 805, 806 (1922) ("When the company had notice of the mortgage itself, they were chargeable with notice of all the facts that a reasonable inquiry would have revealed. A simple question, 'Have you any interest in this insurance policy?' was all that was required. The provision that the mortgaged property shall be insured for the benefit of the mortgagee is a very common practice, and the provision to be expected."). While that notice may have given Driggers the right to make a claim as a mortgage holder, we do not see how a *delay* in adjusting the claim could damage Driggers in any way that is legally cognizable. Driggers's ability to recover under the Travelers policy would be limited to the remaining balance of the mortgage. *See Singletary v. Aetna Cas. & Sur. Co.,* 316 S.C. 199, 202, 447 S.E.2d 869, 870 (Ct. App. 1994) (citing *Swearingen v. Hartford Ins. Co.,* 52 S.C. 309, 29 S.E. 722, 723 (1898) for the proposition that "[u]nder South Carolina law, a party is not entitled to receive insurance proceeds in excess of their interest in the property"). Under this reasoning, the circuit court properly granted summary judgment on the breach of contract claim.

As previously described, Driggers was the intended payee on the lease-to-own contract that McKenzie had with Floyd. As an intended beneficiary of that contract, Driggers had the right to enforce performance under *that* contract. *Fabian v. Lindsay*, 410 S.C. 475, 488, 765 S.E.2d 132, 139 (2014) ("[I]f a contract is made for the benefit of a third person, that person may enforce the contract if the contracting parties intended to create a direct, rather than an incidental or consequential, benefit to such third person.") (quoting *Windsor Green Owners Ass'n v. Allied Signal, Inc.*, 362 S.C. 12, 17, 605 S.E.2d 750, 752 (Ct. App. 2004))). Still, Driggers's ability to maintain a claim for breach of contract as a third-party beneficiary is limited to his expected benefit under the contract. *See, e.g.*, *Touchberry v. City of Florence*, 295 S.C. 47, 48–49, 367 S.E.2d 149, 150 (1988) (finding a third-party beneficiary contract existed and requiring the city to provide services contemplated under the agreement). Where Driggers's remaining benefit under the contract was the outstanding balance on the loan, we do not discern any error in the circuit court's finding that the remaining funds from the Travelers policy could cover Driggers's expected benefit (if any), allowing Travelers to interplead the remaining policy funds, and releasing Travelers from further liability.

**Civil Conspiracy**

At the time Driggers pled a cross-claim for civil conspiracy, South Carolina law required a claimant to plead and show special damages. *See Paradis v. Charleston Cnty. Sch. Dist.,* 433 S.C. 562, 569, 861 S.E.2d 774, 777 (2021) (explaining and

overturning the *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 276 S.C. 284, 287, 278 S.E.2d 607, 608 (1981) framework that required a plaintiff to plead special damages in order to maintain a claim for civil conspiracy). Though the standard for this claim has changed, our supreme court has mandated that any cases originally tried under the previous framework must be judged under that same regime on appeal. *Id.* at 577, 861 S.E.2d at 781. Because *Paradis* was decided roughly six months after the circuit court's order in this case, the *Todd* framework controls. We agree with the circuit court that, here, "[a] mere breach of contract is not a civil conspiracy [and] the damages for breach of contract cannot satisfy the requirement of special damages."

**McKenzie's Interest**

Driggers also argues that Travelers improperly paid insurance funds to McKenzie when McKenzie did not have any insurable interest in the property. We disagree.

Under South Carolina law, an insured that occupies property under a lease-to-own contract must have equity in the property in order to have an insurable interest. *See Belton*, 360 S.C. at 579, 602 S.E.2d at 391 (finding a lessor's arrearages negated any equity he had accumulated and so he did not have an insurable interest in the property). Here, McKenzie began accruing an insurable interest in the property on the date of the contract, April 25, 1997, because of his $8,000 down payment, and his insurable interest in the property continued to accrue with his monthly payments.[1] *Contra Johnson v. Fid. & Guar. Ins. Co.*, 245 S.C. 205, 208, 140 S.E.2d 153, 154 (1965) (finding that a buyer who executed a note and mortgage but "had not invested any money" through a down payment did not have an insurable interest).

**Lack of Discovery**

The record indicates that Driggers refused to be deposed because he was acting pro se and because the circuit court denied his requests to depose the other attorneys in the case. Such refusal is inconsistent with our rules of civil procedure. *See* Rule 30(a)(1), SCRCP ("[A]fter commencement of an action any party may take the testimony of any person, including a party, by deposition upon oral examination."); *then see* Rule 26(b)(1), SCRCP ("Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows: . . . Parties may

---

[1] During Travelers's investigation, statements by Driggers's wife indicated that the total remaining balance of the loan was $61,450.04. If accurate, this suggests that after calculating the payments, principle, interest, and amortization of the loan, McKenzie had paid roughly $113,304 towards the $80,000 loan on the date of loss.

obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action . . . ." (emphasis added)). Furthermore, Driggers did not include any supporting evidence that further discovery was necessary for him to defend against Travelers's motion for summary judgment. *See* Rule 56(e), SCRCP ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his [or her] pleading, but his [or her] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he [or she] does not so respond, summary judgment, if appropriate, shall be entered against him [or her].").

For the foregoing reasons, the circuit court's judgment is

**AFFIRMED.**

**GEATHERS, HEWITT, and VINSON, JJ., concur.**