**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Farm Bureau Ins. Co., Appellant,

v.

Marion L. Driggers, Shiralee Driggers, Tammy D. Floyd, Arthur McKenzie, a/k/a Arther McKenzie, The Travelers Home and Marine Insurance Company, The United States of America acting by and through its agency, The Internal Revenue Service and The South Carolina Tax Commission, Defendants,

of which The Travelers Home and Marine Insurance Company is the Respondent.

Appellate Case No. 2021-000494

———————

Appeal From Williamsburg County
Kristi F. Curtis, Circuit Court Judge

———————

Unpublished Opinion No. 2024-UP-235
Heard March 5, 2024 – Filed July 3, 2024

———————

**AFFIRMED**

———————

J. Dwight Hudson, of Hudson Law Offices, of Myrtle Beach, and J.R. Murphy, of Murphy & Grantland, P.A., of Columbia, both for Appellant.

Susan Drake DuBose, of Baker, Ravenel, & Bender, LLP, of Columbia, for Respondent.

**PER CURIAM:**  In November 2009, a fire nearly destroyed a home in Lake City, South Carolina.  At the time of the fire, the home was titled to Tammy Floyd and occupied by Arthur McKenzie, now deceased, under a lease-to-own contract. Though Floyd was the record owner, payments under the lease-to-own contract went to her father, Marion Driggers.

Two insurance policies were active on the date of loss.  McKenzie insured his interest in the property under a policy with The Travelers Home and Marine Insurance Company (Travelers).  Driggers is the named insured on a South Carolina Farm Bureau Insurance Company (Farm Bureau) homeowner's policy.  Still, the record owner was Floyd, not Driggers.

After the loss, McKenzie made a claim on his Travelers policy and indicated that "Tammie Floyd" had an interest in the property.  After an investigation, Travelers adjusted McKenzie's claim, determined that he had an insurable interest in the property, and then settled and paid out part of his claim.  Travelers did not pay any sums to Driggers or Floyd.

The record reflects that Driggers did not notify Farm Bureau of the loss, for fear of his rates increasing, until October 2012.  After notification of the claim, Farm Bureau brought this declaratory judgment action against Driggers, his wife, Floyd, McKenzie, and Travelers.  It sought declarations as to the value of the property at the time of loss; the ownership interests between the defendants; whether S.C. Code Ann. § 38-75-20 (2015), dealing with the allocation of coverage between multiple insurance policies, applied; and a ruling on whether Farm Bureau was prejudiced by late notice of the loss.  After years of litigation, the circuit court granted summary judgment to Travelers, allowed it to interplead the remaining amount it owed on McKenzie's claim into the court, and dismissed Travelers from the action.

In this appeal, Farm Bureau argues that Travelers should not be dismissed from the case and that Travelers's motion for interpleader should have been denied because it was, and allegedly still is, unclear whether the funds Travelers sought to deposit are sufficient to cover Travelers's portion of the covered loss.  At oral argument, Farm Bureau conceded that section 38-75-20 (cited above and sometimes referred to as the "pro rata" statute) does not apply and that there was no "special relationship" between Travelers and Farm Bureau.  For the following reasons, we affirm the circuit court's judgment allowing interpleader and dismissing Travelers with prejudice.

"[A] moving party is entitled to summary judgment 'if the [evidence before the court] show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 459, 892 S.E.2d 297, 299 (2023) (alterations in original) (quoting Rule 56(c), SCRCP). "When determining whether triable issues of fact exist, all evidence and inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party." *Belton v. Cincinnati Ins. Co.*, 360 S.C. 575, 578, 602 S.E.2d 389, 391 (2004).

Interpleader is required where a party "is or may be exposed to double or multiple liability." Rule 22(a), SCRCP. As a defendant in the original action, Travelers brought its claim for interpleader by way of cross-claim as allowed by the rule. *See id.* Between McKenzie, Floyd, and Driggers, it seems plain that Travelers was exposed to multiple potential claims on the remaining insurance funds. Given the circuit court's finding that the deposited funds were sufficient to cover the remaining claims, the court properly granted Travelers's motions for interpleader and summary judgment, releasing Travelers from any further liability under Rule 22(b). *See* Rule 22(b), SCRCP ("Any party seeking interpleader, as provided in subdivision (a) of this rule, may deposit with the court the amount claimed . . . . The court may thereupon order such party discharged from liability as to such claims, and the action continued as between claimants of such money or property.").

By itself, Farm Bureau's assertion that the amount on deposit may not be sufficient to satisfy all remaining claims against the Travelers policy is insufficient to overturn the circuit court's grant of summary judgment. Instead, Farm Bureau was required to provide the court at least some factual evidence tending to bolster its position that the deposited funds did not adequately account for Travelers's potential liability. *See Lord v. D & J Enterprises, Inc.,* 407 S.C. 544, 553, 757 S.E.2d 695, 699 (2014) ("Once the moving party carries its initial burden, the opposing party must do more than rest upon the mere allegations or denials of his [or her] pleadings, but must, by affidavit or otherwise, set forth specific facts to show that there is a genuine issue for trial.").

We are sensitive to and fully appreciate Farm Bureau's argument that it was prejudiced by Driggers's late notice of the loss and that the delay impeded Farm Bureau's ability to assess the value of the property and the potential claims. Even so, the delayed notice and any prejudice stemming from it are plainly attributable to Driggers, Farm Bureau's own insured. The late notice by Driggers may be reason for Farm Bureau to deny Driggers's claim under the Farm Bureau policy, but it does not justify prolonging the participation of Travelers, which sought to pay out its

remaining insurance funds and demonstrated the amount to be deposited was sufficient to cover its potential exposure to claims.

Travelers settled with McKenzie for around $232,000. Roughly $117,000 went to McKenzie's attorneys' fees and expenses, as allowed by federal law. *See* 26 U.S.C.A. § 6323 (allowing the prioritization of a settling attorneys' fees where, as here, the property was subject to federal tax liens). The remaining funds of about $115,000 reflected the agreed upon amounts payable under McKenzie's dwelling coverage (roughly $101,000) and personal property coverage (roughly $68,000). There is nothing in the record tending to show that these amounts are insufficient to cover the losses attributable to the 2009 fire, and we find no error in the circuit court's assessment that these amounts were sufficient to satisfy potential claims.

Farm Bureau claims it is potentially owed a greater amount than the amount Travelers sought to deposit with the court, and claims it is therefore entitled to equitable indemnity from Travelers. We do not see, however, how expenses like the fees incurred by Farm Bureau in bringing this declaratory judgment action are attributable to Travelers. Our caselaw requires the party seeking indemnity to show that it sustained damage due to the actions of the indemnitor. *Walterboro Cmty. Hosp. v. Meacher*, 392 S.C. 479, 485, 709 S.E.2d 71, 74 (Ct. App. 2011) ("[A] plaintiff asserting an equitable indemnification cause of action [must prove]: (1) the indemnitor was liable for causing the plaintiff's damages; (2) the indemnitee was exonerated from any liability for those damages; and (3) the indemnitee suffered damages as a result of the plaintiff's claims against it, which were eventually proven to be the fault of the indemnitor."). We understand Farm Bureau's decision to bring this action and clarify the chaotic situation, but we are not aware of a legal principle attributing any damage from Farm Bureau's delay in assessing and adjusting Driggers's claim to Travelers.

Lastly, we address Farm Bureau's argument that it lacked a full and fair opportunity to conduct meaningful discovery. We cannot square this argument with the record. The property burned down in 2009. Driggers made his claim under the Farm Bureau policy in 2012. Farm Bureau brought its declaratory judgment action in 2014. There were several scheduling orders over the case's lifespan. The circuit court granted summary judgment in April 2021, after the case had been pending for nearly seven years. The circuit court judge who ultimately granted summary judgment understandably expressed frustration upon learning that the amended discovery deadlines she had last established, in an effort to move the case towards a conclusion, had been ignored.

"A party claiming summary judgment is premature because they have not been provided a full and fair opportunity to conduct discovery must advance a good reason why the time was insufficient under the facts of the case . . . ." *Guinan v. Tenet Healthsystems of Hilton Head, Inc.*, 383 S.C. 48, 54, 677 S.E.2d 32, 36 (Ct. App. 2009); *see also CEL Prod., LLC v. Rozelle*, 357 S.C. 125, 129–30, 591 S.E.2d 643, 645 (Ct. App. 2004) (finding that where a party had not attempted to schedule depositions until thirteen months after filing a counterclaim, and no affidavits were presented supporting the delay to oppose summary judgment, summary judgment was appropriate). Though Farm Bureau argued that the pandemic and Driggers's lack of cooperation made it impossible to conduct the depositions it needed for its opposition to Travelers's motion for summary judgment, the case had been pending for roughly six years before the pandemic began in March 2020. The summary judgment motions at issue here were filed in April 2019—well in advance of the pandemic.

For the foregoing reasons, the circuit court's judgment is

**AFFIRMED.**

**GEATHERS, HEWITT, and VINSON, JJ., concur.**